(No. 31932.

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* EDWARD F. THOMAS, Plaintiff in Error.

*Opinion filed May 24, 1951—Rehearing denied September 17, 1951.*

GETER & GETER, of Chicago, for plaintiff in error.

IVAN A. ELLIOTT, Attorney General, of Springfield, and ROBERT R. CANFIELD, State's Attorney, of Rockford, (DALE F. CONDE, of Rockford, and HARRY L. PATE, of Tuscola, of counsel,) for the People.

Mr. JUSTICE THOMPSON delivered the opinion of the court:

Plaintiff in error, Edward F. Thomas, hereinafter referred to as the defendant, was indicted by the grand jury of Winnebago County, at the October term, 1943, on two counts, the first charging robbery while armed with a dangerous weapon and the second charging rape. He was tried before a jury, found guilty and sentenced to the penitentiary on the first count to a term of from ten to twenty years and on the second count to a term of thirty-five years. It was further ordered that the sentence on the count for robbery run consecutively with, and fol-

low, the sentence for rape under the second count of the indictment.

The errors assigned and argued are: (1) The court erred in not discharging the defendant on his motion that he was not tried within four months after his arrest; (2) that the People did not prove the defendant's sanity beyond a reasonable doubt; and, (3) that the defendant was not proved guilty beyond a reasonable doubt.

The record discloses that on the night of April 24, 1943, the complaining witness and a young man about her own age attended a show at Rockford and, after leaving about 9:30 P.M., drove in his automobile several miles in the country and stopped the car on the side of the road. About that time, according to the testimony of the complaining witness, the defendant, Edward F. Thomas, rapped on the window of their automobile and, with a gun in his hand, ordered them out; that he forced them to precede him for several yards over a fence and for a distance of about one hundred yards into the woods beyond; that the defendant then robbed the complaining witness, took her escort back to their automobile where he locked him in the trunk, returned to the complaining witness and forcibly committed the act charged. The defendant then threw the automobile keys to the complaining witness who, after releasing her escort, proceeded immediately to the police station at Rockford, to report the incident; that there she described the defendant to the police as being a light-skinned Negro wearing bib overalls. Later the defendant was arrested and placed in jail at Waukegan, for some charge not disclosed by the record, after which the sheriff from Rockford took the complaining witness and her escort to Waukegan, where they both identified the defendant as the person who committed the robbery and rape on the complaining witness.

It appears that from that time until July, 1948, the defendant was held in the Illinois Security Hospital at

Menard, but no record appears showing under what process he was committed to that institution. The record does show that he was discharged as being sane on a writ of *habeas corpus* July 1, 1948, from said hospital and, on that same date, was turned over to the Winnebago County authorities to be tried on the charges there standing against him. As disclosed by the record, the defendant, being represented by counsel, was brought to trial within four months after he had been turned over to the Winnebago County authorities, at which time the criminal *capias* which had been issued forthwith at the time of his indictment was served on him.

The defendant contended he was not guilty of the crime of robbery and rape upon the complaining witness and was not in Winnebago County at the time of the alleged commission of the crimes; that at the time of the alleged commission of the crimes he was an insane person having been committed to the hospital at Kankakee in 1940, from Vermilion County; that at the time of his arrest in Waukegan in 1943, he was not in the commission of any crime; that he should have been brought immediately before the court and either tried for the alleged offense or, if proved to be insane, committed to a mental institution, where he should remain until he had fully and permanently recovered.

The People's theory of the case was that the defendant robbed and raped the complaining witness; that at the time of the commission of the crimes he was sane; and that the evidence showed the defendant to be guilty beyond a reasonable doubt.

Defendant first contends he should have been discharged because he was not tried within four months after his incarceration, due to no fault of his, and that the court erred in overruling his motion for such discharge.

It is true, as contended by the defendant, that he was taken in custody by a deputy sheriff on September 12,

1943, while he was seated in an automobile, and that the People offered no evidence as to what happened to defendant following his arrest or how he became an inmate of the Illinois Security Hospital, from which he was released by writ of *habeas corpus* July 1, 1948, but the record is also silent as to his being arrested and in custody on the particular charge for which he was later indicted. His custody on this charge seems to date from the time he was turned over to the authorities of Winnebago County on July 1, 1948, and from that date he appeared by counsel and agreed to proceed to trial, which was within the four months' period. A *capias* was ordered forthwith at the time of his indictment, but was never served on him until July 8, 1948, after he was released from the Security Hospital. Defendant was tried within four months after his arrest on the *capias* issued for the crimes for which he was indicted. Since the court having jurisdiction of the crimes of rape and robbery tried defendant within four months of the date of his commitment on the charges, his right to a speedy trial was not invaded and his motion for discharge was properly denied. *People* v. *Stillwagon,* 373 Ill. 211; *People* v. *Falley,* 366 Ill. 545.

The defendant next contends that the People failed to prove his sanity beyond a reasonable doubt, and urges that the crimes charged in the indictment were alleged to have been committed on April 24, 1943, at which time he was an escapee from the hospital at Kankakee; that he was not discharged from the Illinois Security Hospital for the criminally insane at Menard until July 1, 1948, and that he was arraigned under the indictment in this case on July 8, 1948; that the People failed to prove that he was sane beyond a reasonable doubt at the alleged time of the commission of the crimes.

We find, from an examination of the record, that a number of witnesses testified that they were well acquainted with the defendant during the year 1943, did business

with him and had an opportunity to observe him and his conduct, and that he was, in their opinions, sane. No substantial evidence was offered on behalf of the defendant that he was suffering from a permanent or continuing type of insanity, or that he did not have the ability to distinguish right from wrong. All of this evidence was presented to the jury and it was fairly instructed. The question of insanity is one for the jury to decide, and this court has many times held that it will not disturb the finding of the jury unless it is so palpably against the weight of the evidence as to indicate the verdict was based on passion or prejudice. (*People* v. *Brislane,* 295 Ill. 241; *People* v. *Karpovich,* 288 Ill. 268; *People* v. *Lutzow,* 240 Ill. 612; *People* v. *Deluce,* 237 Ill. 541; *Cronk* v. *People,* 131 Ill. 56; *Steffy* v. *People,* 130 Ill. 98.) It is true that an adjudication of insanity of a permanent type or continuing nature under the law of this State may create a presumption of insanity. We find, however, that this was considered in the trial of the cause and that substantial evidence rebutting this presumption was presented to the jury, and that the jury, after considering the issues with proper instructions, found the defendant guilty of the offense charged. We are of the opinion the jury was justified in deciding the issues against the defendant.

The defendant further contends the evidence produced by the People against him was of such an unsatisfactory character as to leave a reasonable doubt as to his guilt, and a reasonable doubt as to his sanity at the time of the alleged commission of the crimes. We have already pointed out the sufficiency of the proof as to sanity, and it is apparent from the record that the identification was not only certain and credible, but positive corroboration of the identification was the fact that the loot from the robbery was directly traced to the defendant.

We pointed out, in the case of *People* v. *Maffioli,* 406 Ill. 315, "The method employed to identify a defendant

merely affects the credibility of the witness. (*People* v. *Barry*, 371 Ill. 463; *People* v. *Kidd*, 357 Ill. 133.) The jury saw and heard the witnesses as to identification and as to the alibi, and it was for it to determine the weight to be given to the testimony. (*People* v. *Leach*, 398 Ill. 515; *People* v. *Bloom*, 370 Ill. 144.) Although the identifying witnesses did not observe the intruder under highly favorable conditions and there was evidence of an alibi, this does not, in the face of positive identification, require a reversal and the identification, being certain and credible, is sufficient to sustain the verdict. *People* v. *Auriene*, 361 Ill. 440; *People* v. *Gasior*, 359 Ill. 517."

The evidence in the instant case, in addition to certain and credible identification, was accompanied by positive corroboration, and the proof was sufficient in that respect.

We have gone over this record and have found that it clearly presents an issue of fact for the jury. We have many times held that in a criminal case it is the peculiar province of the jury to weigh the evidence and determine the facts, and this court will not reverse a judgment of conviction on the ground that the evidence is insufficient to sustain the finding of guilt unless there is a reasonable and well-founded doubt of the guilt of the accused and the verdict is found to be palpably contrary to the weight of the evidence. *People* v. *Booker*, 378 Ill. 334.

We are unable to say, after a careful analysis of this record, that the evidence indicates a reasonable doubt of guilt. (*People* v. *Grove*, 284 Ill. 429.) The judgment of the circuit court of Winnebago County is, therefore, affirmed.

*Judgment affirmed.*