(No. 38294.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* CECILIO MUNIZ, Plaintiff in Error.

*Opinion filed May 20, 1964.*

THOMAS J. MALONEY and STEPHEN LEE, both of Chicago, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and DANIEL P. WARD, State's Attorney, of Chicago, (FRED G. LEACH and E. MICHAEL O'BRIEN, Assistant Attorneys General, and ELMER C. KISSANE and WILLIAM J. NELLIS, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE UNDERWOOD delivered the opinion of the court:

The defendant, Cecilio Muniz, Sr., was indicted for the murder of his infant son, Cecilio Muniz, Jr. After waiving a jury upon the advice of his retained counsel, defendant was tried by the court, found guilty, and sentenced to the penitentiary for life. On this writ of error defendant seeks remandment, arguing that the court should have impanelled a jury preliminary to trial to determine defendant's sanity; that the issue of insanity, when raised as a defense, necessitated a jury trial; and that trial error occurred in sustaining objections to a hypothetical question asked of a defense psychiatrist, admitting a confession, and failing to hold a hearing in aggravation and mitigation.

Since no question is raised as to the sufficiency of the proof, a factual summary will suffice. The undisputed proof was that on January 17 or 18, 1956, defendant purchased a knife for the purpose of killing his estranged wife and family. About 6:30 P.M., January 19, defendant visited the wife's apartment where he stabbed to death his two young children and his 19-year-old sister-in-law. He thereafter delivered a suicide note to his brother's wife, and attempted to commit suicide by taking electric paste and Clorox. Defendant was found about 1:00 A.M. the following day slumped unconscious in his automobile in a vacant lot. He was taken to the hospital, his stomach pumped and about 4:00 A.M. was questioned by two officers to whom he gave an oral statement of the facts followed by a written confession made to an assistant State's Attorney.

The indictment was returned February 6, and on March 5 the court, prior to arraignment and on motion of defendant's counsel, ordered defendant examined by the behavior clinic. March 26 the report of the behavior clinic examination was presented to the court at arraignment. It indicated defendant understood the nature of the charge, and was able to co-operate with his counsel. The judge then stated he saw no need to impanel a jury to determine defendant's sanity, but offered to do so if defense counsel desired. Counsel then entered a plea of not guilty, and the cause was continued for trial. On May 20, on defendant's motion, the trial judge ordered that Dr. Albert DeLaTorre, a Spanish speaking psychiatrist, be permitted to examine the defendand and report by June 8. On June 8 defendant and his counsel waived a jury trial, because, according to counsel, "There are a few things I believe might come out in mitigation that way."

The bench trial then proceeded, and, upon request by defense counsel, Dr. DeLaTorre testified as the first witness. The doctor testified that he performed a regular psychiatric examination as far as the circumstances warranted,

which revealed that the defendant was a 24-year-old white male who spoke fluently and coherently in his native tongue, was appropriately dressed, exhibited no grimacing, mannerisms, or any other bizarre behavior or traits; answered questions readily and volunteered spontaneous information; was well oriented as to time, place and person, and had normal intellectual resources for a person of his age and background; was moderately depressed but whose emotional responses were within normal limits for his age; did not display, during the interview, any gross overt psychotic symptoms, and whose "stream of talk showed no evidence of autistic or dereistic thinking." The only unusual symptom noted by the doctor was that, in response to a direct question, defendant stated that for the past 8 or 9 months on occasions when he was alone he would hear a voice calling his name. According to the doctor, from a clinical standpoint, this "phenomenon described by him [defendant] lacked the usual characteristics of the common hallucinatory experiences seen in psychotic individuals." In addition the defendant gave the doctor a detailed account of his marital difficulties, denied ever having been mentally ill, and also said he had always been nervous, given to fantastic thinking, and had periods of depression with suicidal ideation. The doctor quoted the defendant as saying he had never attempted suicide except after "the disgrace occurred" when he took poison. Lastly, the doctor said that he "was unable to elicit from Mr. Muniz an account of the events that led to his imprisonment, since he [the defendant] consistently replied that his mind went off, as is the case whenever he is crossed and happened to be 'nervous'," but that "at no time did Mr. Muniz appear interested in proving to this examiner that he was insane or in any way could not comprehend the charges against him." Thereafter, the defense counsel posed a detailed hypothetical question to Dr. DeLaTorre sketching the alleged marital difficulties of the defendant and other circumstances leading up to the

slayings. Several objections by the prosecution were sustained, and the court then asked the defense counsel, "Are you defending him on the theory that this defendant was insane at the time that this happened and is sane now?" The defense answered affirmatively, and proceeded to ask the doctor whether in his opinion the occurrence happened because defendant was suffering from a mental disorder. Again the court sustained an objection on the basis that there was no evidence in the record to sustain the hypothetical question. The defense then excused the doctor, indicating that he would be recalled after the necessary preliminary proof had been made. No other witnesses testified for the defense. The doctor did not appear again at the trial, nor was any continuance requested to secure his presence.

Thereafter, Carmen Muniz, Pilar Muniz, officers Sansone, Lahey, Marek, Johnson and Grant, and John Nelligan, the assistant State's Attorney, testified for the prosecution. Defendant's confession was then read into the record.

Defendant bases this appeal primarily upon the "insanity provisions of the Criminal Code". (Ill. Rev. Stat. 1957, chap. 38, par. 592). This statute among other things gives the trial court the power to order a pretrial or intratrial sanity hearing before a jury, and defendant argues that under the circumstances found in this case, this power became a mandatory duty, citing *People* v. *Bender,* 27 Ill.2d 173; *People* v. *Burson,* 11 Ill.2d 360; *Brown* v. *People,* 8 Ill.2d 540. These cases enunciate the rule that where "before or during the trial, facts are brought to the attention of the court, either by suggestion of counsel or the State, or by the court's own observation, which raise a *bona fide* doubt of the defendant's present sanity, a duty devolves upon the court to cause a sanity hearing to be held, and this is true even if counsel does not raise or argue the point in the trial court." The case at bar, however, is clearly distinguishable from the cited cases in that in each of those there were cir-

cumstances raising a *"bona fide* doubt" as to the defendant's sanity. In *Brown* the defendant's counsel stated to the court that he did not believe his client was in his right mind and moved for an examination by a psychiatrist. The motion was denied and no sanity inquiry was made other than a verbal inquiry by the judge, which was held insufficient. In *Burson*, the defendant's failure to co-operate with his counsel who raised the sanity question several times, defendant's erratic behavior, and his berative outbursts directed toward counsel and the court during the trial were held to have raised a doubt as to defendant's sanity. In *Bender*, the defendant testified that his recollection of a prior trial was hazy. At an informal hearing, outside the presence of the trial jury, a psychiatrist who had declared the defendant to be insane at the first trial examined defendant's prison records, stated his opinion that the present sanity of the defendant was a question of fact for the court, and that it appeared that "We are back where we started." Before the jury, the doctor testified that defendant's changing attitude made it difficult for his counsel to help him. It was held that these circumstances raised a sufficient doubt as to the defendant's sanity so as to require a sanity hearing.

Here, however, the report of the behavior clinic, which was read by the court prior to arraignment, declared that the defendant Muniz was competent to stand trial and to co-operate with counsel. Moreover, although given the opportunity by the court to have a pre-arraignment sanity hearing, the defendant did not accept the offer but immediately entered a plea of not guilty. The defendant was before the bench on at least three occasions prior to his trial, at which times he was obviously under the scrutiny of the presiding judge. There is nothing to indicate that his conduct was anything other than normal on these occasions.

At the trial, the testimony of Dr. DeLaTorre may reasonably be interpreted as describing a normal individual or at least a presently sane individual suffering from the

normal emotional depressions following the commission of a horrible crime. Moreover, the defense, as stated by defendant's counsel, was that defendant was temporarily insane or in the clutches of an irresistible impulse at the time of the crime but sane at the time of the trial. Lastly, the court questioned the defendant on several occasions, and, although the defendant's answers were monosyllabic, there is nothing in the record to indicate that defendant's conduct during the trial was abnormal. Hence, we find no circumstances in the record which raise such a *"bona fide* doubt" of defendant's sanity as would require a reversal for failure of the trial court to hold a sanity hearing either before or during the trial.

Defendant also contends that under the same provisions of the Criminal Code it was mandatory that a jury determine the issue raised by a defense of insanity at the time of the crime, citing as authority Ill. Rev. Stat. 1957, chap. 38, par. 592; *People* v. *Thomas,* 409 Ill. 473, 478; *Brown* v. *People,* 8 Ill.2d 540, 546. We do not find that the statutory language is mandatory on this question, nor are the cases cited authority for such an argument. The statute does enunciate the common-law rule which prohibits the trial, adjudication, sentence, or execution of a person while insane. (*People* v. *Burson,* 11 Ill.2d 360, 368.) At the time of defendant's trial, section 12 of division II of the Criminal Code (par. 592) was substantially unchanged since its original enactment in 1874. Historically, only a jury of 12 men constituted the legal tribunal for the trial of an indictment for a felony, and a defendant could not confer jurisdiction for a bench trial by waiving his right to a jury trial. (*Harris* v. *People,* 128 Ill. 585, 589-594.) Now, however, since 1941, the right of a defendant to waive a jury trial has been recognized. (Ill. Rev. Stat. 1963, chap. 38, par. 736; *People* v. *Spegal,* 5 Ill.2d 211, 213-222.) Defendant relies on *Brown* v. *People,* 8 Ill.2d 540. However, *Brown* hardly supports the defendant's argument because

the court there found that since the defense of insanity at the time of the crime had not been raised, it was waived. Nevertheless, the court did have this to say: "The defense of insanity at the time of the crime, like any other defense, must be raised at the time of the trial and submitted to the jury. No special jury is impaneled to try this question, it being submitted to the jury who are hearing the principal case." (*Brown* v. *People,* 8 Ill.2d 540, 546.) This language and that found in *People* v. *Thomas,* 409 Ill. 473, 478, properly implies that the question of defendant's mental condition at the time of the crime is a question of fact to be decided by the trier of fact. Where, as here, defendant waives a jury trial, the court becomes the trier of fact, (*People* v. *Meyers,* 392 Ill. 355), and, therefore, fully competent to determine the question of defendant's sanity or lack thereof at the time of the crime.

Defendant further contends that it was error for the trial court to sustain an objection to the hypothetical question asked Dr. DeLaTorre because the facts embraced within the question eventually appeared in evidence. The general rule seems to be that a hypothetical question asked of an expert witness may not include facts which are not in evidence before the trier of fact. (*People* v. *Moretti,* 6 Ill.2d 494, 528; *People* v. *Black,* 367 Ill. 209; *People* v. *Herkless,* 361 Ill. 32, 42.) Here, the hypothetical question was asked before any other evidence was submitted, and the question contained many factual details concerning Muniz's marital and family problems dating from many months prior to and leading up to the slaying. Since Dr. DeLaTorre was the first witness in the case, there was no evidentiary support for the facts leading up to the slaying which were assumed by the hypothetical question. While defense counsel indicated he would recall the doctor after proof had been made of the hypothetical facts, this was not done. The objection was properly sustained.

The error alleged to have occurred in the admission of

the confession is based upon the argument that there was no proof that the defendant was not influenced by medication at the time. Defendant's argument is that because he had swallowed electric paste and Clorox in a suicide attempt about 8 hours prior to his interview by the assistant State's Attorney, and because his stomach had been pumped in the interim period, he was presumably unable to give a rational statement. However, the assistant State's Attorney who took the statement and the officers present during its taking all testified with reference to the circumstances, and the statement itself is a clear and lucid account of the facts prior to and at the time of the slaying. Its clarity and accuracy negate any inference that defendant was confused, incapacitated or mentally distracted, and no effort was made by defendant to show that the materials he had swallowed in his suicide attempt, or his subsequent medical treatment, would tend to affect his confession. We find nothing in the record to support defendant's present argument. *People* v. *Davis,* 412 Ill. 391.

Defendant's final contention is that he was denied a hearing in mitigation. Sufficient answer to this exists in our prior holding that failure to request such hearing constitutes a waiver thereof, since the record here indicates no request was made. (*People* v. *Wakeland,* 15 Ill.2d 265, 269; *People* v. *Rummerfield,* 4 Ill.2d 29; *People* v. *Corrie,* 387 Ill. 587.) Actually, the record discloses that defense counsel made what could only be construed as a statement in mitigation wherein he pointed to the psychiatrist's report that this crime was a "situational reaction", to defendant's alleged emotional instability and lack of malice towards his children as well as other mitigating factors. The record also discloses that following judgment, and before pronouncing sentence, the court also inquired of defendant as to whether he had anything to say, and defendant answered "no." Since this apparently occurred in the presence of counsel, and followed the mitigating statement, defendant cannot now com-

plain that he was denied a hearing. *People* v. *Spann,* 20 Ill.2d 338, 343; *People* v. *Clifton,* 408 Ill. 475.

Finding no error, the judgment of the criminal court of Cook County is affirmed.

*Judgment affirmed.*