(No. 39170.—

THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* VLADAMIRE SAMUEL GEORGEV, Plaintiff in Error.

*Opinion filed September 29, 1967.*

RONALD A. GULLSTRAND, of Aurora, appointed by the court, for plaintiff in error.

WILLIAM G. CLARK, Attorney General, of Springfield, and C. ROBERT OHSE, State's Attorney, of Yorkville, (FRED G. LEACH, Assistant Attorney General, and JEROME NELSON, Assistant State's Attorney, of counsel,) for the People.

Mr. JUSTICE WARD delivered the opinion of the court:

The defendant, Vladamire Georgev, indicted for burglary in Kendall County, was found guilty by a jury on March 25, 1963. He received a sentence of not less than 4 years nor more than 10 years.

He seeks to review a denial by the circuit court of Kendall County of his petition under the Post-Conviction

Hearing Act, which petition alleged that his trial did not accord him due process of law. He urges reversal of the circuit court asserting that in the trial proceedings his constitutional rights were violated, in that: (1) counsel incompetently represented him; (2) evidence which was the product of an illegal search and seizure was introduced against him; (3) oral confessions were admitted without his having been furnished a list of witnesses present at the time such confessions were made; (4) the jury was allowed to mingle with prosecution witnesses and spectators; (5) an unreasonable delay occurred in providing the defendant with a preliminary hearing before a magistrate; and (6) incriminating statements and confessions were elicited while defendant was in custody without his having been advised of his constitutional rights to remain silent and of his right to counsel.

The record discloses that on Sunday, January 27, 1963, a North Aurora police officer at about 2:00 A.M. observed a white 1958 Ford proceeding north on Route 31 through the village without a red tail-light lens and without a license-plate light. The officer proceeded to stop the car. Two men alighted from the passenger side of the Ford and approached the police car. The officer could not determine which of the two men had been driving. First, Cantu, defendant's 18-year-old companion, said he had been the driver and then the defendant, 27 years of age, stated he had been driving. The officer walked to the Ford and observed several rolls of coins on the floor of the car and an adding machine on the back seat which was partially covered by a coat. The officer earlier had radioed the license number of the vehicle to the State Police at Elgin and, according to the record which does not tell clearly, apparently had ascertained that the license plates on the auto had not been issued to it but had been issued to another vehicle, or the officer had ascertained that the registered owner of the auto was a person other than the

defendant or Cantu. The officer testified that the auto "was running with fictitious plates."

· The officer then called the Elgin State Police post for assistance. Cantu and the defendant were directed to follow the police car in their auto to the North Aurora Police Station. There, assisted by a State trooper who had arrived, the North Aurora police officer searched the interior of the car. In the course of this search $300 was found in a paper bag beneath the dashboard; $250 was found under the front seat and on the floor in wrappers or rolls, and another $100 was found in a coat partially covering the adding machine in the back seat; a tire iron; a metal letter opener; several cartons of cigarettes; a quart of beer; and a pair of pliers were also found in the search. The State introduced into evidence only the adding machine and the tire iron.

Later, on the morning of January 27, 1963, Cantu, after questioning, gave the police a statement confessing the burglary of which Cantu and the defendant were convicted. It was not disputed that the money and other items found in the car had been taken in the burglary, though, as stated, only the adding machine and the tire iron used in the burglary were offered and received in evidence.

The defendant asserts that the record discloses numerous trial errors which establish his counsel's incompetency: *inter alia,* his counsel's failure to make an opening statement, failure to tender any instructions to the jury, particularly his failure to tender or request a cautionary instruction regarding the testimony of an accomplice, his not moving to suppress evidence, and counsel's not demanding of the State the names of witnesses to statements which the defendant asserts were oral confessions.

What is necessary to establish inadequacy of representation by counsel so as to require a new trial, where the attorney has been appointed by the court, has been described by this court in *People* v. *Morris,* 3 Ill.2d 437, at 449.

"[B]ased both on precedent and reason, we believe that in order to sustain his position here the defendant must clearly establish: (1) actual incompetence of counsel, as reflected by the manner of carrying out his duties as a trial attorney; and (2) substantial prejudice resulting therefrom, without which the outcome would probably have been different." We said, too, in *People* v. *Cox,* 22 Ill.2d 534, at 537, 538: "The defendant next contends that appointed counsel was incompetent. This contention is based on decisions recognizing that the incompetence of counsel may be such as to deny a defendant the fair trial that is contemplated by provisions of the State and Federal constitutions. The question of whether a defendant was adequately represented by competent counsel must be answered solely from the circumstances of each particular case (*People* v. *Francis,* 356 Ill. 74); and in order to sustain his position the defendant must clearly establish actual incompetency of counsel and substantial prejudice resulting therefrom, without which the outcome would probably have been different. *People* v. *Morris,* 3 Ill.2d 437."

The complaint that the attorney at trial failed to make an opening statement is without merit. Making or waiving an opening statement in behalf of a defendant is a question of judgment in strategy and if a defense attorney chooses to forego making an opening statement it certainly cannot be said to reflect want of professional competence.

Excepting a case in which the court's instructions to the jury are deemed by counsel to be complete and fair, the attorney for an accused in a typical defense should suggest instructions to the court for its approval and the instruction of the jury. In a case involving accomplice testimony, as here, defense counsel is entitled to a cautionary instruction concerning such testimony. Trial counsel here did not offer any suggested instructions. This was a professional omission which under circumstances other than here could be considered such a defect as to have deprived an accused of

a fair trial and due process. However, considering the evidence and the instructions which were given by the court, including an instruction that the credibility of witnesses was a question for the jury to assess, we do not deem that the omission by counsel was controlling so far as the verdict was concerned.

We consider hereafter the complained-of failure to move to suppress and the failure to seek the names of witnesses to assertedly oral confessions.

Viewing the allegations of error by trial counsel and the entire record it cannot be said that the conduct of the trial resulted in such prejudice to defendant as to require a new trial.

Here, the evidence of the defendant's guilt was convincing. Making admissions against interest, the defendant had said "that he was going to prison—just one of those things—he was broke and needed the money and he got caught at it;" and "the stuff was found in my possession—what more do you want?" Also, certain statements made by the defendant were self-contradictory. He had admitted he was driving the auto at the time it was halted by the police officer. Yet he testified he had been drinking, had fallen asleep and knew nothing of the events just preceding his arrest. Cantu, the 18-year-old, who with the defendant was indicted for the burglary, testified that he and the defendant had committed the burglary. Cantu was of course an accomplice but his testimony was corroborated by the defendant's admissions and supported by evidence found in the car in which the defendant was riding or driving.

The evidence is strongly persuasive of the guilt of the defendant. It cannot be plausibly held that absent any demonstrated deficiency on the part of the trial counsel the outcome of the defendant's trial "would probably have been different." *People* v. *Cox*, 22 Ill.2d 534, 538.

The defendant contends that the search of the auto was unauthorized and hence any evidence obtained by such

search was inadmissible. The validity of the arrest is not questioned but only the validity of the search. It is argued that the search was illegal, as it was out of the presence of the defendant and was unnecessary to protect the officer, prevent escape or to discover the fruits of the crime, which here were two automobile regulatory infractions. The defendant urges, too, that a proper search must have been contemporaneous with arrest and in its immediate vicinity, and contends that a search warrant for the car should have been procured.

It is clear that these arguments of the defendant as to the alleged illegality of the search proceed basically on the assumption that the search here must be justified, if at all, on the ground that it was incidental to the arrest of the defendant and Cantu for the traffic offenses described. This is an erroneous assumption. This court in *People* v. *Erickson,* 31 Ill.2d 230 stated at page 233: "It has long been established that the constitutional safeguards contained in section 6 of article II of the constitution of this State and the fourth amendment of the United States constitution do not prohibit all searches made without a warrant but only those which are unreasonable, and that a determination of the reasonableness of any given search must be made upon the facts there present. *United States* v. *Rabinowitz,* 339 U.S. 56, 70 S. Ct. 430, 94 L. Ed. 653; *People* v. *Watkins,* 19 Ill.2d 11.

"It is equally well established that valid searches which are not incidental to an arrest may be made without a warrant. Such searches, however, must be based upon probable cause, defined as a knowledge of facts justifying a reasonably prudent person in believing that a crime has been or is being committed, and that evidence thereof is contained in the automobile. (*Carroll* v. *United States,* 267 U.S. 132, 45 S. Ct. 280, 69 L. Ed. 543; 74 A.L.R. 1457, *et seq.*)." See also *Husty* v. *United States,* 282 U.S. 694, 75 L. Ed. 629; *People* v. *Faginkrantz,* 21 Ill.2d 75.

We deem that the circumstances here reasonably indicated to the lone officer who stopped the defendant's car that he had probable cause to believe he was confronted with a crime other than the simple automobile regulatory violations. The auto the accused occupied was "running with fictitious plates," as the officer testified. The defendant and Cantu each claimed to have been the driver of the auto. The defendant did not have any driver's license and Cantu did not have a valid one. The officer observed rolls of coins on the floor of the auto and an adding machine on the rear seat of the car, partially covered by a coat. It was 2 :00 A.M. Considering all of the circumstances surrounding the officer's encounter with the defendant and Cantu, the officer as a reasonably prudent person was justified in the belief that a crime, such as auto theft, burglary or knowing possession of stolen property, had been committed and that evidence confirming such belief could be found in the auto occupied by the defendant and Cantu. The search's validity was not impaired by the fact that the officer did not know of the specific offense that the search might disclose. *New Jersey v. Boykins,* 36 L.W. 2081.

It may be that in a typical instance of probable cause to search an auto, the search will be conducted when and where such probable cause becomes apparent. The fact that here the lone officer directed the defendant and Cantu to follow him in their car a few blocks to the vicinity of the police station did not cause the search to be unreasonable. Rather reasonableness dictated that the officer not attempt to conduct a search of the auto on the highway. It was 2 :00 A.M. on a snowy winter morning. Driving conditions were hazardous, as was illustrated by the fact that the defendant and Cantu abandoned their plans to drive to St. Anne after their auto had gone off the road. Prudence and a concern for public safety commanded that the officer remove his car and that of the defendant from the highway at once, as the autos' presence was endangering not

only themselves but other drivers who might come upon them. Too, it would have been grossly imprudent for the lone officer to have attempted to search the auto in the immediate presence of the defendant and Cantu and have risked being overcome and injured. Considering the hour and weather conditions the officer would have been inviting their escape had he directed the defendant and Cantu to remain a distance far enough from the auto to permit him to conduct a proper search, assuming that such could have been conducted under the other existing circumstances. We deem that a judgment of reasonableness directed that the officer not seek to conduct a search of the car on the highway. Reasonableness of a search, as has been stated, is the touchstone of its legality.

Even in search-incident-to-arrest situations the fact that the search was conducted at a place other than at the scene of arrest has been held not to invalidate the search. The Supreme Court of South Dakota in *State* v. *McCreary* (S.D. 1966), 142 N.W.2d 240, upheld a search under circumstances similar to those here. Two officers in the late afternoon halted an auto on a public highway and arrested the occupants, two men and a woman. It was February and cold. Because of the prevailing weather and road conditions the defendants and their auto were transported to the sheriff's office. The car was searched outside the sheriff's office and evidence against the defendants found. The court said at page 247: "Here the need to clear the highway and to protect the defendants from the elements as well as to afford the officers better conditions for the search, in the exercise of good judgment, reasonably required the brief delay of a more thorough search of the persons and effects of the defendants until the sheriff's office was reached. * * * Applying the test of reasonableness under the Fourth Amendment * * * we hold that the search of the defendant's automobile without a warrant was incidental to the legal arrest." See also *Price* v. *United States,* (D.C.

cir.) 348 F.2d 68; *Arwine* v. *Bannan,* (6th cir.) 346 F.2d 458; *People* v. *Webb,* 56 Cal. Rptr. 902, 424 P.2d 342.

The defendant's argument that a search warrant for the auto should have been procured is without merit. If a search, as here, is a reasonable one the question whether a search warrant could have been obtained is not relevant. The Supreme Court in *Cooper* v. *California,* 386 U.S. 58, 62, 17 L. Ed. 2d 730, 733, 87 S. Ct. 788, declared: "It is no answer to say that the police could have obtained a search warrant, for '[t]he relevant test is not whether it is reasonable to procure a search warrant, but whether the search·was reasonable.' *United States* v. *Rabinowitz,* 339 U.S. 56, 66, 94 L. Ed. 653, 660, 70 S. Ct. 430."

The defendant, to support his assertion that the search was illegal, cites *Preston* v. *United States,* 376 U.S. 364, 11 L. Ed. 2d 777; *People* v. *Erickson,* 31 Ill.2d 230; *People* v. *Catavdella,* 31 Ill.2d 382, and *People* v. *Lewis,* 34 Ill.2d 211. However, reliance on the holdings in these cases is misplaced. Each involved situations wherein the Supreme Court or this court held that the searches concerned could not be justified as having been incident to arrest. None involved a proper search based on probable cause.

The defendant also contends there was error because he was not furnished copies of two oral statements made by him, which he describes as confessions, together with the names and addresses of persons present at the confessions. He states that if the confessions were not reduced to writing he was entitled to the names and addresses of those present. (Ill. Rev. Stat. 1963, chap. 38, par. 729.) The defendant argues that because the Illinois statutory requirements were not met the statements should not have been admitted into evidence. As has been stated, the defendant made two incriminating statements. Donald Curran, an agent for the Department of Public Safety, testified that the day following the defendant's arrest he asked the defendant if he would give a statement concerning the burglary.

Curran testified that the defendant refused to give such a statement and added "the stuff was found in my possession; what more do you want?" Oliver Mundwiler, the sheriff of Kendall County, and the custodian of the jail, testified that on March 21, 1963, the defendant stated to him that "he [the defendant] knew he was going to prison and it was just one of those things, he was broke and needed the money and he got caught at it."

Confessions must be distinguished from admissions against interest. Jones on Evidence, 5th Ed., sec. 398 states: "* * * As the terminology is used in criminal law a 'confession' must be distinguished from an 'admission' of lesser import * * *. A confession out of court or an extra-judicial confession is comprehensive in its scope, * * * in that it acknowledges all of the elements of the crime and therefore is a confession of guilt * * *. A verbal (that is, expressed in words, oral or written) admission in criminal law, as generally understood, is different from a confession in that it is not an acknowledgment of guilt but is a statement having evidentiary value in proof of an element of the offense charged."

In *People* v. *Stanton,* 16 Ill.2d 459, a defendant who was tried for burglary was asked by the arresting officer where he had got the money found in his possession. The defendant, who had been observed running from the burglarized premises, replied: " 'Out of the register.' " The defendant, asked by another officer what he was doing in the building which had been burglarized, stated that he had needed the money. The defendant at trial asserted that the statements were confessions and argued, as here, that they should not have been admitted into evidence because the defendant had not been furnished the names and addresses of the witnesses present. We held the statements to have been admissions against interest and said in part, at pages 466, 467:

"There is a distinction between a statement which is

only an admission and one which constitutes a confession of guilt of the crime charged. A confession is a voluntary acknowledgment of guilt after the perpetration of an offense, and it does not embrace mere statements or declarations of independent facts from which guilt may be inferred, while an admission is any statement or conduct from which guilt of the crime may be inferred but from which guilt does not necessarily follow." See, also, *People v. Nelson,* 18 Ill.2d 313.

We deem that the statements of the defendant here were admissions against interest and not confessions.

The fact that it was after indictment and after counsel had been appointed for the defendant at the time of his admission to Sheriff Mundwiler did not here render it inadmissible. The admission was not "deliberately elicited" by the witness as occurred in *Massiah* v. *United States,* 377 U.S. 201, 12 L. Ed. 2d 246. (See, also, *People* v. *Halstrom,* 34 Ill.2d 20, and *People* v. *Stark,* 33 Ill.2d 616.) The record discloses that Mundwiler testified that, each evening in the county jail, "I go out approximately at that time [9:30 to 10:00] to put them [the inmates] in their cells, and most normally every time I go out in the evening they kid around and we talk and discuss a few things, their problems and what has taken place during the day and such as that before they go in their cells." He testified that two other inmates, the defendant and he were present when Georgev made the statement against interest. Mundwiler said: "We were discussing—each one, of course, was interested in their own case, and Georgev made the statement to me that he knew he was going to prison anyway and it was just one of those things, he was broke and needed the money, and he got caught at it." There is nothing to suggest that the admission by the defendant was not a spontaneous and voluntary one and nothing to suggest that Mundwiler devised any stratagem to induce it. There was no deliberate eliciting of the admission and the fact that at the time the defendant was

under indictment and was represented by counsel did not under the circumstances make it inadmissible. *United States v. Gardner*, (7th cir.) 347 F.2d 405.

The defendant's argument that the trial court should have declared a mistrial, which defendant's trial counsel sought, when the jury, having been empaneled but prior to having been sworn, mingled and conversed with spectators and allegedly with witnesses for the prosecution, cannot be accepted. The defendant does not claim to be able to demonstrate prejudice in fact but urges that we assume prejudice.

This court considered a like contention in *People* v. *Potts*, 403 Ill. 398, wherein at page 402 we said:

"On a motion for a new trial, and again in this court, defendant alleged that he had been denied a fair and impartial trial because the jurors were allowed to separate and to converse with spectators at the trial, and in one instance with the sheriff of the county who appeared as a witness against the defendant. Affidavits and counteraffidavits were filed in regard to this ground. It would serve no useful purpose to detail their contents. Suffice it to say that defendant does not state wherein he was actually prejudiced by such conduct, but infers that prejudice could have, and might possibly have, occurred. The practice of allowing jurors to separate, while absolutely prohibited by the common law, has in recent years been left to the sound discretion of the court. In noncapital cases it has been held that it is not error unless prejudice can be shown. (*People* v. *Grizzel*, 382 Ill. 11; *People* v. *Fisher*, 340 Ill. 216.) Conversation of a juror with other persons does not constitute ground for a new trial unless it is shown to have prejudiced the rights of the defendant. (*People* v. *Phelps*, 388 Ill. 618; *People* v. *Coniglio*, 353 Ill. 643.) In the absence of any showing of prejudice to defendant or of an abuse of discretion by the court, we must hold that there is no merit to this contention."

The defendant complains that there was unreasonable delay in bringing him before a magistrate following his arrest early Sunday morning, January 27. Whether he was taken before a magistrate on Monday, January 28, or on Tuesday, January 29, is not clear from the record. Under the circumstances of this case it cannot be said there was unreasonable delay to the prejudice of the defendant's right to due process. See *People v. Kelly,* 404 Ill. 281.

The trial court did not abuse its discretion when it denied the defendant's motion for a mistrial.

The defendant complains that he was not advised of his right to remain silent, to retain counsel or to have the court appoint counsel for him. Referring specifically to the admission against interest made to Donald Curran, which has been already discussed, the defendant cites, *inter alia, Escobedo v. Illinois,* 378 U.S. 478, 12 L. Ed. 2d 977, and *Miranda v. Arizona,* 384 U.S. 436, 16 L. Ed. 2d 694. However the commands of *Escobedo,* which is of questionable pertinency as defendant did not request counsel, and *Miranda* apply only to trials commenced after those decisions. (*Johnson v. New Jersey,* 384 U.S. 719, 16 L. Ed. 2d 882.) As the defendant's trial here preceded *Escobedo* and *Miranda,* they are not applicable.

The judgment of the circuit court of Kendall County is affirmed.

*Judgment affirmed.*