(No. 39865.—

THE PEOPLE OF THE STATE OF ILLINOIS, Appellee, *vs.*
MARLENE FORD, Appellant.

*Opinion filed March 28, 1968.*

WARD, J., took no part.

UNDERWOOD, J., SOLFISBURG, C.J., and SCHAEFER, J., specially concurring.

ROYAL E. SPURLARK, JR., of Chicago, appointed by the court, for appellant.

WILLIAM G. CLARK, Attorney General, of Springfield, and JOHN J. STAMOS, State's Attorney, of Chicago, (FRED G. LEACH, Assistant Attorney General, and ELMER C. KISSANE and JOHN M. GOLDBERG, Assistant State's Attorneys, of counsel,) for the People.

Mr. JUSTICE HOUSE delivered the opinion of the court:

Marlene Ford was found guilty of the murder of her husband, Robert Ford, by a jury in the circuit court of Cook County and was sentenced to the Women's Reformatory at Dwight for a term of 14 to 17 years. A constitutional question gives us jurisdiction.

On May 25, 1962, the body of defendant's husband was found lying on the floor of the bedroom in their apartment. A pathologist's report revealed that the cause of death was excessive bleeding resulting from a stab wound in the chest. Investigating officers testified that defendant told them that while her husband was in bed she had stabbed him with a large bread knife, which they found in the kitchen sink.

Defendant entered a plea of not guilty, and in July, 1962, her attorney asked for a hearing to determine her

ability to stand trial. On September 21, 1962, a jury determined that she was not competent and she was committed to the Kankakee State Hospital. About a year later in October, 1963, defendant was returned to the court for further proceedings and in December, 1963, she was determined capable of standing trial. Defendant then filed a petition seeking a pretrial hearing to determine her responsibility at the time of the charged offense, under section 6—2(a) of the Criminal Code of 1961. (Ill. Rev. Stat. 1961, chap. 38, par. 6—2(a).) Her petition was denied, and in May, 1965, the case was brought to trial.

Defendant first contends that section 6—2(a) of the Criminal Code is unconstitutional and violative of the fifth, sixth, and eighth amendments to the constitution of the United States, and sections 2, 9, and 10 of article II of the Illinois constitution. Specifically, she argues that she should have been granted a separate pretrial hearing to determine her mental condition at the time of the alleged offense.

The defense of insanity at the time of the crime, like any other defense, must be raised at the time of trial and submitted to the jury who are hearing the case, and no special jury is called or pretrial hearing conducted to determine this question. (*Brown* v. *People,* 8 Ill.2d 540.) The question of defendant's mental condition at the time of the crime is a question of fact to be determined by the trier of fact. *People* v. *Myers,* 35 Ill.2d 311; *People* v. *Muniz,* 31 Ill.2d 130.

Defendant argues that she has been denied, in effect, her right not to be a witness against herself in that by raising the issue of insanity she has, by implication, admitted commission of the offense. She contends denial of commission of the offense and a plea of insanity are necessarily inconsistent and that both positions cannot be advanced in the same trial. The situation is somewhat analogous to the area of confessions where we have held that a defendant has the right to deny that he made incriminating state-

ments and also raise the question of the voluntariness of the statements. (*People* v. *Norfleet,* 29 Ill.2d 287; *People* v. *Williams,* 36 Ill.2d 194.) Those are obviously inconsistent positions while the alternatives here are not. There is no reason why defendant may not deny commission of the crime and also raise the affirmative defense of insanity. Section 6—2(a) does not, in our opinion, deprive defendant of any constitutionally guaranteed right.

Secondly, defendant argues that the jury's verdict of guilty was manifestly against the weight of the evidence with respect to the issue of insanity at the time of the offense. As noted earlier, the question of insanity is one for the jury to decide (*Brown* v. *People,* 8 Ill.2d 540; *People* v. *Muniz,* 31 Ill.2d 130), and we will not disturb the jury's finding unless it is so manifestly against the weight of the evidence as to indicate the verdict was based on passion or prejudice. *People* v. *Thomas,* 409 Ill. 473.

The evidence on the issue of insanity shows that defendant was a patient at the Illinois State Psychiatric Institute from October to December, 1961, and that she was released without psychosis. In July, 1962, she was examined by Dr. William Haines, Director of the Behavior Clinic of Cook County, with reference to her capacity to stand trial. Dr. Haines testified that he formed no opinion as to her mental condition at the time of the offense, that as of August 1, 1962, she was competent to stand trial, and that sometime thereafter she became incapable of standing trial. After a jury found her incompetent to stand trial in September, 1962, defendant was a patient at the Kankakee State Hospital for just over a year.

Two doctors who treated or consulted with the defendant while she was at the Kankakee State Hospital testified that at the time they examined her she was psychotic and had a schizoid personality. They expressed no opinion as to the length of time the condition existed. Dr. Kermit T. Mehlinger, senior psychiatrist of the Municipal Court

Psychiatric Institute in Chicago, testified that he examined and treated defendant from February 10, 1964, to the time of trial, that he diagnosed her as an ambulatory schizophrenic, that in his opinion she had been psychotic for 6 or 7 years prior to her trial in 1965, and that there were times when she lacked the substantial capacity to appreciate the criminality of her conduct or to conform her conduct to the requirements of law. Two neighbors and defendant's brother testified that they thought defendant was mentally disturbed on or about May 25, 1962, and although it is apparent from the record that the neighbors did not fully understand the questions concerning defendant's capacity to appreciate the criminality of her conduct, they testified that they believed she did not have such capacity.

In rebuttal the State introduced four police officers who investigated the murder and saw and talked with defendant shortly after the incident occurred. They all testified that defendant was coherent, logical, and in touch with reality, and that in their opinion, she was able to substantially appreciate the criminality of her conduct and was able to conform her conduct to the requirements of law.

There is sufficient evidence in the record from which a jury could find that defendant was responsible within the meaning of section 6—2(a) of the Code at the time of the offense.

Defendant next contends the court should have sustained her motion to suppress an alleged oral confession because the State failed to supply her with a list of all witnesses to the alleged confession at the time of her original arraignment. The alleged confession consisted of statements by defendant to the police officers that there had been an accident, that she and her husband had had a disagreement over financial matters, and that while he was in bed she stuck a knife in his chest. It does not appear that defendant's replies or statements amounted to a confession of guilt of the crime charged, but rather they were only admissions

of facts from which guilt could be inferred but does not necessarily follow. (See *People* v. *Stanton,* 16 Ill.2d 459; *People* v. *Georgev,* 38 Ill.2d 165.) Accordingly, the statute is inapplicable. Furthermore, there is no showing that defendant was in any way prejudiced by the failure of the State to fully comply with the statute. She did not allege any confession was coerced; her mother and brother were listed as witnesses; and defendant does not claim she was surprised by the failure of the State to fully comply with the statute. It was not error to admit evidence of defendant's oral statements.

Finally, defendant argues she was denied a fair and orderly hearing as guaranteed by the constitution. She first contends that a photograph of the body of the deceased was erroneously admitted into evidence, proved nothing, and only tended to inflame and prejudice the minds of the jurors against the defendant. The State argues that the photograph, which was introduced in connection with the testimony of the pathologist who examined the body, had probative value in helping the jury to better understand this testimony. Admission of photographs is discretionary with the trial judge. (*People* v. *Hoffman,* 32 Ill.2d 96.) While the photograph in question was not included in the record on review, defendant has not shown that the picture was so shocking, or gruesome that its admission amounted to an abuse of discretion by the trial court.

Defendant further argues that the court unduly limited the testimony of doctors from the Kankakee State Hospital by requiring them to base an opinion as to defendant's mental condition on their examination and observations alone rather than permitting them to base their opinion on information gathered by others. The record shows, however, that the court allowed considerable testimony by various physicians concerning not only their own observations but also concerning case histories reported by others. She also argues that Dr. Mehlinger, as a treating physician,

should have been permitted to state his opinion as to whether defendant lacked the substantial capacity either to appreciate the criminality of her conduct or to conform her conduct to the requirements of law at the time of the murder rather than requiring him to give an opinion based on a hypothetical situation. Dr. Mehlinger's examination did not commence until February 10, 1964, almost two years after the murder. He was permitted to testify that at times she was not responsible during the 6-to-7-year period prior to the trial. When defendant's counsel was instructed to ask Dr. Mehlinger a hypothetical question assuming the facts he had stated, he chose not to do so. We are of the opinion that defendant was not deprived of a fair and orderly trial.

The judgment of the circuit court of Cook County is affirmed.

*Judgment affirmed.*

Mr. JUSTICE WARD took no part in the consideration or decision of this case.

Mr. JUSTICE UNDERWOOD, Mr. CHIEF JUSTICE SOLFISBURG, and Mr. JUSTICE SCHAEFER, specially concurring:

We agree that the judgment should be affirmed, but we believe the contention that it was error to deny the motion to suppress the oral confession should be met in a manner different from that in the opinion of the court. That opinion states "The alleged confession consisted of statements by defendant to the police officers that there had been an accident, that she and her husband had had a disagreement over financial matters and that while he was in bed she stuck a knife in his chest." The difficulty is that an objection was sustained to the only testimony in the record containing any reference to an "accident." That testimony may not now be considered by us to transform into an admission (as to which the statute does not apply) the remaining portions

of the statement which seem to us to constitute a confession.

That it is a confession and that the list of witnesses present when the confession was made is incomplete does not, however, necessitate reversal. There is no contention that the statements were in any way coerced nor does defendant claim surprise. Her mother and brother were listed as witnesses present at the time the confession was made. They testified and were not questioned regarding the confession. Under these circumstances it seems clear that defendant was not prejudiced, and that it was not error to admit the evidence.