THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
RICHARD LEE ELLIS, Defendant-Appellant.

Fifth District   No. 75-313

Opinion filed June 10, 1976.

G. J. MORAN, J., dissenting.

Ralph Ruebner and Andrew Berman, both of State Appellate Defender's Office, of Elgin, for appellant.

Robert H. Rice, State's Attorney, of Belleville (Bruce D. Irish and Robert J. Anderson, both of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE EBERSPACHER delivered the opinion of the court:

This is an appeal by the defendant, Richard Lee Ellis, from a judgment of conviction for the crime of murder entered by the circuit court of St. Clair County pursuant to a jury verdict of guilty. The 29-year-old defendant was convicted of murdering William H. Johnson, the stepfather of the defendant, who died late in the evening of November 5 (or early morning of November 6, 1974) from injuries inflicted by the defendant with a blunt metal object in the presence of defendant's mother, the victim's wife.

An issue at the trial was whether the defendant was sane at the time of the commission of the crime. The defendant's mother testified that Ellis at times would get "furious" with various individuals. She related three episodes, each of which had occurred from two to four years prior to the trial, which taken with defendant's conduct on this occasion led her to the conclusion that defendant had a "sick mind" at the time of the commission of this crime. Her testimony regarding defendant's conduct on those occasions was of such nature as to seriously question defendant's sanity on those occasions, as does her testimony of the details of this incident seriously question defendant's sanity at its commission. However, the jury may have taken into consideration the witness' interest in excusing the conduct of her son on this occasion, and concluded that the evidence of sanity presented, satisfied them of defendant's sanity beyond a reasonable doubt.

The State presented lay testimony of defendant's sanity. The State elicited testimony that immediately prior to the homicide, Mrs. Johnson had told her son to go to bed, and had expected to be obeyed. The murder weapon was carried off by the defendant, and was never found. These facts were evidence that defendant was not irrational, could understand a command from his mother, and conform his conduct to that command. The disposal of the weapon showed that defendant understood that what he had done was wrong, and he was destroying evidence of his crime intentionally.

As additional proof of defendant's sanity at the time of commission of

the crime, the State presented Bruce Nicholson, the defendant's brother-in-law, to testify concerning the defendant's sanity. He testified that on the morning of November 6, he was aroused from sleep by the defendant, and that they had a conversation. During the course of this conversation, the defendant requested the loan of some of Nicholson's clothing, specifically a pair of pants and a shirt. Again, this served to show that defendant was observed shortly after the crime by someone who knew him, and that he had again attempted to dispose of evidence of his crime. Nicholson testified that the defendant left his home and then returned a few hours later. At that time, the defendant informed Nicholson that the defendant believed that he had killed his stepfather. Bruce Nicholson was at the time of the trial 15 years old. Nicholson also testified that on the morning of November 6, when the defendant woke him up, he noticed nothing abnormal or unusual about the defendant. He testified that during the three or four years that he had known the defendant, he had never seen any abnormal behavior by the defendant. He testified that in his opinion the defendant was sane on November 6, 1974. On cross-examination, Mr. Nicholson testified that abnormal behavior would be things like fighting, drinking and cussing. He testified that sane meant not crazy.

Jack Sutten, a Captain in the St. Clair County Sheriff's Department, also testified as a rebuttal witness for the State. He testified that based on one brief conversation with the defendant and on his observation of the defendant on approximately 20 separate occasions, he believed that the defendant was sane. These observations were made while the defendant was in custody.

The first question raised by the defendant on this appeal is whether the State proved beyond a reasonable doubt that at the time of the crime, defendant was legally sane.

■■ All men are presumed to be sane, yet when evidence, even by lay testimony, of defendant's insanity is introduced, the defendant's sanity is put in issue. (*People v. Smothers*, 55 Ill. 2d 172, 302 N.E. 324.) Once the defense has been raised, the presumption of sanity ceases and the State must prove beyond a reasonable doubt that at the time of the incident, defendant was legally sane. See Ill. Rev. Stat. 1973, ch. 38, par. 3—2(b).

Insanity is defined in section 6—2 of the Criminal Code of 1961 (Ill. Rev. Stat. 1973, ch. 38, par. 6—2) as follows:

"(a) A person is not criminally responsible for conduct if at the time of such conduct, as a result of mental disease or mental defect, he lacks substantial capacity either to appreciate the criminality of his conduct or to conform his conduct to the requirement of law.

(b) The terms 'mental disease or mental defect' do not include an abnormality manifested only by repeated criminal or otherwise antisocial conduct."

In *People v. Ford*, 39 Ill. 2d 318, 235 N.E.2d 576, the defendant, Marlene Ford, was charged with the murder of her husband by stabbing him to death with a bread knife. As the first trial date approached, Mrs. Ford was found to be incapable of standing trial. After a year at Kankakee State Hospital, she was found competent to stand trial, and a trial was commenced. There was expert medical testimony to the effect that she had been psychotic for six or seven years prior to trial, and that there were times when she lacked the substantial capacity to appreciate the criminality of her conduct, or to conform her conduct to the requirements of the law. Two neighbors and defendant's brother testified that they thought defendant was mentally disturbed on or about the date of the killing. Testimony was also received concerning the defendant's lengthy history of mental difficulties, and her treatment at various State facilities. The State introduced the testimony of four police officers who investigated the murder and saw and talked with defendant shortly after the incident occurred. They all testified that defendant was coherent, logical, and in touch with reality, and that in their opinion, she was able to substantially appreciate the criminality of her conduct and was able to conform her conduct to the requirements of the law. The court recited these factors in its opinion, and said:

"\* \* \* [D]efendant argues that the jury's verdict of guilty was manifestly against the weight of the evidence with respect to the issue of insanity at the time of the offense. As noted earlier, the question of insanity is one for the jury to decide (*Brown v. People*, 8 Ill. 2d 540; *People v. Muniz*, 31 Ill. 2d 130), and we will not disturb the jury's finding unless it is so manifestly against the weight of the evidence as to indicate the verdict was based on passion or prejudice. *People v. Thomas*, 409 Ill. 473." (39 Ill. 2d 318, 321.)

After reviewing the evidence in detail, the court continued:

"There is sufficient evidence in the record from which a jury could find that defendant was responsible within the meaning of section 6—2(a) of the Code at the time of the offense." 39 Ill. 2d 318, 322.

■■ In the case before us, we find ample evidence to support the conclusion of the jury. The concealment of evidence by the defendant after the crime, the testimony of Bruce Nicholson concerning defendant's manner after the homicide, defendant's subsequent statement to the effect that he thought he had killed his stepfather, and the testimony of the

police officer, indicate rationality, and will support the jury's findings of sanity at the time of commission of the crime.

The second issue raised by the defendant is whether he was denied the effective assistance of counsel in violation of his constitutional rights under the Federal and State constitutions.

The test for inadequacy of counsel was restated in *People v. Georgev*, 38 Ill. 2d 165, 168-69, 230 N.E.2d 851:

> "What is necessary to establish inadequacy of representation by counsel so as to require a new trial, where the attorney has been appointed by the court, has been described by this court in *People v. Morris*, 3 Ill. 2d 437 at 449. '[B]ased both on precedent and reason, we believe that in order to sustain his position here the defendant must clearly establish: (1) actual incompetence of counsel, as reflected by the manner of carrying out his duties as a trial attorney; and (2) substantial prejudice resulting therefrom, without which the outcome would probably have been different.' "

Defendant argues that the fact of homicide was not disputed, nor was identification a question, and since the only issue was defendant's sanity, as defense counsel stated, the failure to obtain a free psychiatric opinion by merely requesting it under section 5—2—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—1(g)) was a "dereliction of duty." However, defendant concedes that failure to request the examination is not incompetence *per se*. Each case must be examined on its facts to determine if incompetence exists. (*People v. Morris*, 3 Ill. 2d 437, 121 N.E.2d 810, 819.) Defendant misconstrues the nature of the examination provided under section 5—2—1 (Ill. Rev. Stat. 1973, ch. 38, par. 1005—2—1). That section provides that any party may request that the defendant be examined by a qualified expert to determine his fitness to stand trial or be sentenced. The Council Commentary (Ill. Ann. Stat., ch. 38, §1005—2—1 (Smith-Hurd 1973)) makes it clear that fitness relates only to a person's ability to function within the context of trial. It seems clear that a defendant may request an examination pursuant to this statute and not receive an opinion by a qualified expert as to his mental condition at the time of the commission of the offense. Another method of obtaining the appointment of a psychiatrist is to inform the State that the defendant may rely upon an insanity defense, at which time the State may obtain a free psychiatrist under section 115—6 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1973, ch. 38, par. 115—6). Both sides are then given copies of the report.

There is no question that the defense of insanity may be raised without

relying upon expert testimony. In *People v. Smothers*, 55 Ill. 2d 73, 174, 302 N.E.2d 324, the court said:

"Our earlier cases have permitted lay testimony, including the expression of opinions, concerning a defendant's insanity. (*People v. Patlak*, 363 Ill. 40; *People v. Krauser*, 315 Ill. 485; *Jamison v. People* 145 Ill. 357). In *People v. Childs*, 51 Ill. 2d 247, we held that expert testimony was not required to raise the issue of sanity, and upon examination of the authorities cited by the parties, and those collected at 17 A.L.R. 3d 146, we adhere to that position."

■■ However, there is a very real question here whether the defendant's case would have been helped or hindered by expert witnesses, and their potential testimony. That possibility must have presented itself to trial counsel, realizing that if defendant were examined by an expert as a result of giving notice of an insanity defense that the report would also be available to the State. This case presents a question of tactics and judgment concerning the insanity issue, and since failure to obtain expert testimony is not incompetence *per se*, we find defendant's argument of incompetence not persuasive. Counsel conducted what appears to have been a vigorous defense; no glaring procedural errors were presented to us. Defendant was not deprived of his right to effective representation; his trial counsel was competent.

The last issue presented by the defendant is whether the State's Attorney's comment to the jury during closing argument, that if defendant was insane he could not be on trial constitutes reversible error. The comment was as follows:

"Mr. Hoffman referred to the law that you will get on insanity. You will hear that you must find that there is a mental defect or a mental disease and I submit to you that you have no evidence on either score. You can't look at a vicious crime and say that he who commits a senseless, vicious crime is insane. I would hope not. What a folly and travesty of justice, Ladies and Gentlemen, if you were to find this defendant not guilty by reason of insanity and sane now, which means he goes out the door, or not guilty by reason of insanity but still insane, with the State's position being that we are trying a sane man today. I would submit to you we couldn't be trying him if there was a serious issue of his present sanity * * *."

■■ We find no merit to defendant's argument. It is clear that any opinion the State's Attorney expressed was clearly based on the evidence adduced at the trial. It is permissible for a State's Attorney to express his opinion of the defendant's guilt, if the record shows the opinion was based on the evidence. (*People v. Fleming*, 32 Ill. App. 3d 418, 336 N.E.2d 244.) We particularly note the last quoted sentence; here the issue

was sanity at time of commission, not the issue of fitness for trial, or "present sanity" as stated. As a result the question of whether defendant could be tried if there was a serious issue of present sanity, was improper and objection to it should have been sustained. We cannot say that it was prejudicial. Even though the comment was improper, the defendant must show that the results of the trial would have been different if the comment had not been made. (*People v. Johnson*, 33 Ill. App. 3d 957, 963, 338 N.E.2d 845.) The defendant fails to make that showing and it is not inferable from the record.

Judgment affirmed.

JONES, J., concurs.

G. J. MORAN, J., dissents.