THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
ORLANDO MARTINEZ, Defendant-Appellant.
Second District   No. 78-455

Opinion filed July 21, 1980.

E. William Bedrava, of Berwyn, and Joshua Sachs, of Chicago, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and Barbara A. Preiner, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE NASH delivered the opinion of the court:

After trial by jury defendant, Orlando Martinez, was convicted of rape and sentenced to a term of eight years imprisonment. He appeals, asserting that the trial court erred in three respects:

First, that certain testimony of the arresting officer constituted an impermissible comment on defendant's exercise of his right to remain silent. Second, that it was error to admit testimony of psychiatrists called by both the State and defendant relating to his prior criminal conduct. Third, that the trial court erred in the forms of verdict submitted to the jury on the issue of insanity.

We affirm.

The testimony adduced at trial, insofar as it is relevant to the resolution of the issues raised in this appeal, discloses that on April 28, 1977, a 66-year-old woman was raped in her apartment by an intruder whom she could not thereafter identify beyond a general description. A towel containing blood and semen stains which matched defendant's blood type was recovered from her apartment and Martinez' fingerprint was found in the bathroom. Investigating officers also recovered a Winston cigarette butt.

Prior to his arrest, Martinez was questioned by Officer Thomas Hanlon of the Elmhurst Police Department at the Great Lakes Naval Base where defendant was stationed. Martinez was advised that an

investigation of a rape was being conducted, that he was a suspect, and of his *Miranda* rights. During the interview, Officer Hanlon collected Winston cigarette butts smoked by defendant and informed him they were to be sent to the crime lab for comparison with a cigarette butt found in the victim's apartment. Hanlon further testified that he then had the following dialogue with defendant:

> "I asked him if he knew what type of cigarette we might have recovered in the apartment, and he stated that the way his luck was going it was probably a Winston. I advised him that it was a Winston cigarette butt and that the victim smoked Kent cigarettes. He then got rather ruffled and got up and walked out of the room and stated that he had talked to me enough and didn't want to talk to me any longer. At that time the interview was terminated."

Hanlon also testified to other conversations he had with defendant after his arrest, but it is only the foregoing testimony which is alleged by defendant to be an impermissible comment on his right to remain silent.

Dr. Marvin Ziporyn, a psychiatrist called by defendant, referred to a portion of the history he had obtained from defendant relating to his family life and to his alcoholism. On cross-examination, the doctor was asked whether he had also taken a "criminal history" of the defendant. Defendant's objection was sustained by the trial court which limited the State to inquiries relating to prior "anti-social" rather than "criminal" conduct of the defendant. In response to a question regarding past antisocial conduct of defendant contained in the history, Dr. Ziporyn stated defendant had said that he had been in trouble before but did not describe its nature. Dr. Ziporyn also testified to his opinion that at the time of the offense defendant suffered from a mental disease or defect he described as "schizophrenia or schizophrenic reactions, simple type." Subsequently, in response to similar questions propounded by the State to the psychiatrists it called in rebuttal, Dr. Lyle Rossiter testified, without objection, that "he told me that he had been charged with burglarizing a grocery store and also charged with contributing to the sexual delinquency of a minor. He had also been charged, as I recall, with bike theft, but again, as I recall, I believe he said this charge was dropped." Dr. Werner Tuteur testified, also without objection, that "he told me that at one time he was arrested for trespassing and another time a burglary occurred and the third occasion he had difficulties after approaching a 16-year old girl." These aspects of defendant's history were included in hypothetical questions posed by the State to Drs. Tuteur and Rossiter in which they were asked to express their respective opinions as to defendant's sanity at the time of the offense. Dr. Tuteur concluded that the defendant did not suffer from a mental disease or defect but had an

"inadequate personality." Dr. Rossiter diagnosed the defendant as having a sociopathic personality and suffering from chronic alcoholism.

Prior to the testimony of Drs. Tuteur and Rossiter the court admonished the jury that the doctors would testify about facts they had learned in taking histories from defendant which were considered by them in forming their medical opinions and that "[t]hese facts should not be considered by you in the guilt part of this case as a fact. It is only a fact as it relates to the medical part of the case."

During the conference on instructions, the trial judge denied defendant's request that the words "and we further find that he has recovered from his condition of insanity" and "and we further find that he is still insane" be added to the forms of verdict submitted to the jury on the grounds that the inclusion of the recovery phraseology would present a collateral issue and distract the jury from the issue of defendant's sanity at the time of the offense.

We consider first whether the testimony of Officer Hanlon describing defendant's termination of his interview with the officer requires reversal as an improper comment on defendant's right to remain silent. We note, however, that defendant neither objected to this testimony at trial nor did he raise it as a ground for relief in his post-trial motion. Under these circumstances, defendant has waived this issue as a ground for reversal on appeal (*People v. Pickett* (1973), 54 Ill. 2d 280, 296 N.E.2d 856; *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.) We also find it does not constitute plain error.

Unlike the circumstances of *Doyle v. Ohio* (1976), 426 U.S. 610, 49 L. Ed. 2d 91, 96 S. Ct. 2240, or *People v. Rehbein* (1978), 74 Ill. 2d 435, 386 N.E.2d 39, *cert. denied* (1979), 442 U.S. 919, 61 L. Ed. 2d 287, 99 S. Ct. 2843, the fact of defendant's reliance on his right to remain silent was not here drawn from him on cross examination (he did not testify in trial) nor did the prosecutor suggest defendant's silence as an indicium of guilt in his argument to the jury.

The testimony characterized by defendant as an impermissible comment on his exercise of the right to remain silent clearly was not a *Doyle* violation. Defendant had not remained silent during this pre-arrest interview with the investigating officer but had talked with him. He subsequently chose to exercise his right to terminate the conversation, however, and, reasonably enough, the officer so stated. No further reference to the fact of the termination of the conversation was made in the trial of the case. We do not agree that the fact that such an interview ended at defendant's request, without exploitation by the State, can be considered as an impermissible comment on his silence. *Cf. People v. Robinson* (1976), 44 Ill. App. 3d 447, 358 N.E.2d 43.

Defendant next contends that the trial court erred by allowing the expert witnesses to testify to his prior criminal conduct, knowledge of which was acquired by them as a part of the history upon which their opinions as to his sanity were premised.

■■ ■ As a general rule, evidence of prior crimes of an accused is not admissible. (*People v. Lindgren* (1980), 79 Ill. 2d 129, 402 N.E.2d 238; *People v. Romero* (1977), 66 Ill. 2d 325, 362 N.E.2d 288.) Evidence of crimes other than the one for which a defendant is being tried is considered unreliable because it may create a tendency to condemn an accused upon the belief that he had "escaped unpunished from other offenses rather than upon a belief that he is guilty of the crime charged, and such evidence may create the inference that a defendant is guilty of the crime charged merely because he is a person who is likely to commit crime." (*People v. Lamparter* (1977), 56 Ill. App. 3d 823, 829, 371 N.E.2d 997, 1001.) Although the law recognizes the potential for unfair prejudice in the admission of such evidence, there are well-established exceptions to the rule. If relevant for a purpose other than to show propensity to commit crime, evidence of prior crimes of an accused is admissible to show motive, intent, knowledge, design, plan, identification, *modus operandi*, to refute an alibi (*People v. Lindgren*; *People v. Romero*), to show consciousness of guilt (*People v. Spaulding* (1923), 309 Ill. 292, 141 N.E. 196), or to prove some other material fact in issue. *People v. McDonald* (1975), 62 Ill. 2d 448, 343 N.E.2d 489; *People v. Ballard* (1978), 65 Ill. App. 3d 831, 382 N.E.2d 800, *cert. denied* (1979), 444 U.S. 925, 62 L. Ed. 2d 180, 100 S. Ct. 262; *People v. Swimley* (1978), 57 Ill. App. 3d 116, 372 N.E.2d 887, *cert. denied* (1978), 439 U.S. 911, 58 L. Ed. 2d 257, 99 S. Ct. 281; *People v. Corder* (1977), 54 Ill. App. 3d 138, 369 N.E.2d 349.

In the present case, defendant argues that evidence of prior criminal or antisocial conduct considered by a psychiatrist as part of the basis for his diagnosis and opinion as to defendant's sanity does not fall within any of the exceptions to the rule barring such evidence. He also contends that the admonishment of the court limiting consideration of the other crimes to the medical part of the case was insufficient and should have been supplemented by an instruction which would have clarified the limited purpose for which the evidence was admitted. We note, however, that defendant did not tender Illinois Pattern Jury Instructions (hereinafter IPI), Criminal, No. 3.14 (1968), which would have served this purpose.

Dr. Ziporyn testified that his opinion was based upon tests he had administered to defendant and a history obtained from him in which it was disclosed that he had been in trouble before; Drs. Rossiter and Tuteur also considered the history of criminal conduct they obtained from defendant in their opinions. Defendant does not now contend that the doctors did not consider this aspect of his history in drawing their

conclusions regarding his sanity or that it was not relevant to a diagnosis of his mental condition (see *People v. Ward* (1975), 61 Ill. 2d 559, 338 N.E.2d 171; *People v. Black* (1937), 367 Ill. 209, 10 N.E.2d 801; *People v. Moor* (1934), 355 Ill. 393, 397-98, 189 N.E. 318, 319-20; *People v. Driver* (1978), 62 Ill. App. 3d 847, 853, 379 N.E.2d 840, 846; *People v. Greenfield* (1975), 30 Ill. App. 3d 1044, 1048, 333 N.E.2d 36, 40), but apparently concludes this aspect of the basis for their opinions may not be disclosed to the jury.

It is well established that wide latitude will be given in cross-examination of an expert witness. (*People v. Crawford Distributing Co.* (1978), 65 Ill. App. 3d 790, 382 N.E.2d 1223.) When such a witness expresses an opinion as to a defendant's sanity, the scope of the inquiry into the basis for that opinion is broad. (See *People v. Moor* (1934), 355 Ill. 393, 397-98, 189 N.E. 318, 319-20.) In a similar context the court noted in *People v. Haun* (1966), 71 Ill. App. 2d 262, 268-69, 217 N.E.2d 470, 473, that

> "To determine insanity, you cannot take an isolated cross section of a single series of acts and myopically examine it within the narrow confines of the date set forth in a formal charge. In order to make a proper determination, there must be more than a cross section; we must examine the person, his history, his relationship with the victim, prior mental illnesses and other intervening factors of causation. * * *
>
> * * * Illinois has never adopted a restrictive evidentiary rule with respect to the scope of inquiry where mental state or condition is in issue."

Once defendant introduced evidence tending to show insanity, he put his mental condition in issue and caused the burden to shift to the State to show beyond a reasonable doubt that he was sane at the time of the offense. (*People v. Foster* (1977), 56 Ill. App. 3d 22, 371 N.E.2d 961; *People v. Ellis* (1976), 39 Ill. App. 3d 373, 350 N.E.2d 326; *People v. Lono* (1973), 11 Ill. App. 3d 443, 297 N.E.2d 349.) The jury is not required to accept the conclusions of any witness as to the issue of a defendant's sanity, but the weight of the psychiatrist's opinion is to be measured by the reasons given for the conclusion and the factual details supporting it. (*People v. Stamps* (1977), 52 Ill. App. 3d 320, 367 N.E.2d 543, 547.) The trier of fact may consider the presence or absence of a history of criminal conduct (*People v. Burress* (1971), 1 Ill. App. 3d 17, 19, 272 N.E.2d 390, 391), and while "depravity of character, abandoned habits, or the commission of atrocious crimes are not in themselves evidence of insanity * * * these factors may be considered." *People v. Foster* (1977), 56 Ill. App. 3d 22, 34, 371 N.E.2d 961, 971.

In a situation analogous to the present case, it was asserted in *People*

*v. Williams* (1967), 38 Ill. 2d 115, 230 N.E.2d 224, that section 104—2(d) of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1965, ch. 38, par. 104—2(d) (repealed 1973)) precluded a psychiatrist from testifying to statements made by the accused during an examination conducted as part of proceedings to determine defendant's competency to stand trial. The court rejected this contention, reasoning that the statute's proscription against admitting statements of the accused to the psychiatrist on the isssue of guilt was limited only to statements offered to prove the truth of what they assert and did not prevent the admission into evidence of such statements to show a defendant's mental condition. See also *People v. Muskgrove* (1976), 44 Ill. App. 3d 381, 358 N.E.2d 336.

In *People v. Isenberg* (1978), 60 Ill. App. 3d 325, 376 N.E.2d 778, the court rejected a claim that section 115—6 of the Code of Criminal Procedure of 1963 prevented testimony by an examining psychiatrist of statements made to him by defendant relating to the use of alcohol and pot. That statute provides:

"Any statements made by defendant to such experts shall not be admissible against the defendant unless he raises the defense of insanity or the defense of drugged condition, in which case they shall be admissible only on the issue of whether he was insane or drugged." (Ill. Rev. Stat. 1975, ch. 38, par. 115—6.)

In *Isenberg,* as in the present case, defendant had raised the issue of insanity, and as such testimony was relevant to that issue it was admissible. Here all three of the psychiatrists apparently considered the history of defendant relating to his other offenses or antisocial conduct as relevant to their expert testimony and as factors to consider in drawing their conclusions on the issue of his sanity. (*Cf. People v. Black* (1937), 367 Ill. 209, 10 N.E.2d 801.) The trial judge aptly admonished the jurors that they must limit their consideration of the history taken from defendant to the medical portion of the case and to not consider it in determining whether defendant committed the substantive offense for which he was being tried. We note in this regard that the jurors were given IPI Criminal No. 1.01 by which they were instructed that "any evidence which was received for a limited purpose should not be considered by you for any other purpose."

■■ We conclude that the testimony of the expert witnesses relating to defendant's prior conduct was properly admitted as limited by the trial court.

Defendant's final contention is that the issue of whether he was still insane or had recovered should have been submitted to the jury as they may have been reluctant to acquit him, even if warranted by the evidence, for fear it would result in his immediate release.

■■ Prior to August 1, 1977, section 115—4(j) of the Code of Criminal

Procedure of 1963 (Ill. Rev. Stat. 1975, ch. 38, par. 115—4(j)) required that if a defendant is found not guilty by reason of insanity, the jury must state in its verdict whether or not he had recovered from his former condition of insanity. The standard IPI Criminal Nos. 26.03 and 26.04 still reflect this requirement. However, effective August 1, 1977, and in effect on January 24, 1978, the date of the trial in this case, the language relating to a defendant's recovery was deleted from the statute. It now requires that in the event of a verdict of not guilty by reason of insanity, a hearing shall subsequently be held pursuant to the Mental Health Code to determine whether a defendant is in need of mental treatment. (Ill. Rev. Stat. 1977, ch. 38, par. 115—4(j).) We conclude the verdicts submitted to the jury were in proper form and defendant's contentions are without merit. See *People v. Carlson* (1980), 79 Ill. 2d 564, 404 N.E.2d 233.

For these reasons the judgment of the Circuit Court of Du Page County is affirmed.

Affirmed.

LINDBERG and VAN DEUSEN, JJ., concur.