THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
ROBERTA M. McCUMBER, Defendant-Appellant.

Third District   No. 3—84—0076

Opinion filed April 12, 1985.

HEIPLE, P.J., concurring in part and dissenting in part.

Robert Agostinelli and Peter A. Carusona, both of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (John X. Breslin and Terry A. Mertel, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Colleen K. Connell, of The Roger Baldwin Foundation of ACLU, Inc., and Lucy J. Karl, of Sachnoff, Weaver & Rubinstein, both of Chicago, and Marsha Levick, of NOW Legal Defense & Education Fund, of New York, New York, for *amici curiae.*

JUSTICE SCOTT delivered the opinion of the court:

The defendant, Roberta M. McCumber, was charged in a multi-count indictment with murder, concealment of a homicidal death and obstructing justice. The indictment essentially alleged that the defendant shot and killed Jeffrey Williams and concealed his body. Following a change of venue from Peoria County to Du Page County, the cause proceeded to trial before a jury, which returned a verdict finding the defendant guilty, but mentally ill, of voluntary manslaughter, concealment of a homicidal death and obstructing justice. A sentencing hearing was held, following which the defendant was sentenced to imprisonment for a term of 10 years for manslaughter and a consecutive three-year term for concealment. On appeal of the conviction and sentencing, the defendant urges that numerous errors occurred in circuit court proceedings.

The defendant met the decedent, Jeffrey Williams, in May 1976. For 2½ years prior to May 19, 1983, they had lived together, and during that time, according to evidence adduced at trial, Williams had physically abused the defendant on hundreds of occasions. According to the defendant, May 19, 1983, was another of those occasions. On that date, Williams drove to St. Francis Hospital, where the defendant was just getting off work. As the defendant entered Williams' car for a ride home, she noticed that Williams had been drinking and was

angry. Upon arriving at the Peoria apartment they shared, Williams showed the defendant a gun he was carrying and began demanding that the defendant make certain changes in her life. The argument escalated as Williams choked the defendant and struck her on the head and legs. The defendant picked up the gun, and as Williams pushed her toward the bed in the apartment, the gun fired, striking Williams.

The defendant, trained as a nurse's aide, felt for Williams' pulse, and after three fast beats, there was nothing. Yet, loud gurgling noises continued to come from the body. The defendant, wanting the noise to stop, fired a second shot in Williams' head. The defendant's attempts to move the body were unsuccessful, it being too heavy, so she removed the legs from the torso, using a hatchet, a saw and surgical scissors. She then deposited the torso in a field of tall grass in nearby Woodford County, while she placed the legs in a plastic bag, and the bag in a dumpster at the Glenbrook Apartments.

On May 23, 1983, Williams' body was discovered, and a police investigation followed which led to the arrest of the defendant. At the trial which followed, the defendant presented the testimony of two experts, Dr. Ziporyn, a psychiatrist, and Dr. Legan, a clinical psychologist, both of whom believed that the defendant was suffering from a mental disease and at the time of Williams' shooting, she was unable to conform her conduct to the requirements of the law. The jury, apparently rejecting this testimony in part, found the defendant guilty, but mentally ill, of voluntary manslaughter, concealment and obstructing justice.

The defendant alleges that numerous errors occurred in the trial in the circuit court which require a reversal of the verdicts reached by the jury. First, she asserts that the State failed to prove beyond a reasonable doubt that she was sane at the time of the alleged offenses. The jury heard the testimony of Dr. Ziporyn and Dr. Legan to the effect that the defendant was suffering from a mental disease and was unable to conform her conduct to the requirements of the law. It also heard testimony from Dr. Chapman, a psychiatrist, and Dr. Colen, a psychiatrist, which disputed the conclusion that the defendant was unable to conform her conduct to the requirements of the law. Finally, the jury heard the testimony of Jan Seroka, a unit clerk of St. Francis Hospital, who observed that the defendant seemed completely normal at work at the time of the offense and thereafter. The determination of the defendant's sanity will not be disturbed unless it is so palpably erroneous as to indicate that it was based on prejudice or passion. (*People v. Martin* (1980), 87 Ill. App. 3d 77, 409 N.E.2d 114; *People v. Kuhn* (1979), 68 Ill. App. 3d 59, 385

N.E.2d 388.) In weighing the question of the defendant's sanity, the trier of fact must consider the totality of the evidence, lay and expert, and is not required by law to accept the opinions of psychiatrists concerning the defendant's sanity. (*People v. Moore* (1980), 89 Ill. App. 3d 202, 411 N.E.2d 579.) We do not agree with the defendant that, given the lay and expert testimony presented at trial, the jury's determination of sanity was palpably erroneous.

■ The defendant also asserts that error occurred when she was cross-examined at trial by the prosecutor concerning statements she made about the homicide during a court-ordered psychiatric examination. According to the defendant, this questioning violated her constitutional right against self-incrimination, as well as her statutory rights under section 115—6 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 115—6). We note, however, that the cross-examination was objected to by defendant's attorney, the objection was sustained, and the jury was ordered to disregard the questions and responses. Under such circumstances, even where the defendant's constitutional rights are involved, it is generally held that the judge's instruction to the jury to disregard is sufficient to dispel any error which occurred. (*People v. Richardson* (1978), 61 Ill. App. 3d 718, 377 N.E.2d 1235; *People v. Jackson* (1974), 23 Ill. App. 3d 945, 320 N.E.2d 591.) While the parties have cited considerable authority on the issue of whether the cross-examination was in fact error, we find it unnecessary to reach this issue, because if error occurred, it was cured.

■ One of the themes of the prosecution's theory of the case concerned the defendant's alleged fabrication of her insanity defense based upon a character in a television soap opera. In pursuing that theme, the prosecution was allowed, over defendant's objection, to ask a defense psychiatrist his opinion about the sanity of the hypothetical television character. At the time the questioning took place, certain facts recited in the hypothetical question were not yet in evidence. The defendant relies on

> "[t]he general rule [which] seems to be that a hypothetical question asked of an expert witness may not include facts which are not in evidence before the trier of fact." (*People v. Muniz* (1964), 31 Ill. 2d 130, 137, 198 N.E.2d 855, 859.)

This general rule is not absolute. The trial court may, at its discretion, allow facts to be included in hypothetical questions even if the facts are not yet in evidence if there is an assurance by counsel that such facts will later be established. (*Coriell v. Industrial Com.* (1980), 83 Ill. 2d 105, 413 N.E.2d 1279.) We do not find an abuse of the trial

court's discretion in the instant case, and having reviewed the record, we find the facts presented by the prosecutor in rebuttal to be sufficiently identical to the facts recited in the hypothetical question such that the hypothetical question was supported by the evidence. In asking the hypothetical question of the defendant's witness, Dr. Ziporyn, the prosecutor was attempting to establish that the doctor was too quick to give his expert medical opinion as to an individual's sanity. We agree with the circuit court that for such a limited purpose, the question was proper. The question did not exceed the broad scope of inquiry which is allowed in cross-examination of an expert witness. *People v. Martinez* (1980), 86 Ill. App. 3d 486, 408 N.E.2d 358; *People v. Crawford Distributing Co.* (1978), 65 Ill. App. 3d 790, 382 N.E.2d 1223.

In his closing remarks, the prosecutor made improper remarks in attacking the integrity of the defendant's expert witnesses and misleading remarks concerning the qualification of a psychologist to render an opinion of the issue of sanity, concerning the burden of proof and concerning the required findings for a verdict of guilty but mentally ill. None of these improper and misleading remarks were objected to by the defendant. Nevertheless, the defendant now suggests that the prosecutor's conduct constituted reversible error. Where the prosecutor's improper conduct occurs without objection, it will only become the basis for reversal if it rises to the level of plain error. That standard is not met unless the conduct constitutes a material factor in the conviction. (*People v. Brown* (1981), 100 Ill. App. 3d 57, 426 N.E.2d 575.) In determining the materiality of the prosecutor's conduct, we must consider it in the context of the entire case. (*People v. Bartall* (1983), 98 Ill. 2d 294, 456 N.E.2d 59.) Such conduct can be improper, inexcusable and unprofessional, yet not plain error. (*People v. Bartall* (1983), 98 Ill. 2d 294, 456 N.E.2d 59.) We find this to be the case under the instant facts. The improper remarks, while inflammatory, found some basis in the evidence, and the misleading remarks were corrected when the trial judge properly charged the jury before it began its deliberations. Improper, inexcusable and unprofessional conduct on the part of the prosecutor must not be cavalierly approved, but where, as here, it was not objected to, and did not constitute a material factor in the conviction, it is not plain error.

The defendant objected to the special verdict form proffered by the prosecution and delivered by the trial court. The form purported to provide a differentiation between the verdict of not guilty by reason of insanity and the verdict of guilty but mentally ill. The instruction on the form read as follows:

"You will also receive ten (10) special forms of verdict. As to each charge you will be provided with both a 'not guilty, by reason of insanity' and 'guilty, but mentally ill' form of verdict.

A special verdict of not guilty by reason of insanity may be returned instead of a general verdict but such special verdict requires a finding by the jury that the defendant committed the acts charged but at the time of the commission of those acts the defendant was insane.

A special verdict of guilty but mentally ill may be returned instead of a general verdict but such special verdict requires a finding by the jury beyond a reasonable doubt that the defendant committed the acts charged and that the defendant was not legally insane at the time of the commission of those acts but that she was mentally ill at such time."

Defendant's objection to this instruction, in contrast to the alternate instruction which she offered but which was rejected by the circuit court, is that the instruction "requires a finding *** that defendant was insane." The defendant contends that this language places the burden of proving insanity on the defendant. In other instructions to the jury, the circuit court made it unmistakably clear that the burden of proof on the issue of the defendant's sanity rested with the prosecution. This instruction, taken with the fact that the instruction objected to was merely intended to provide a differentiation between the insanity verdict and the guilty but mentally ill verdict, were sufficient to advise the jury as to the prosecution's burden. (*People v. Gold* (1967), 38 Ill. 2d 510, 232 N.E.2d 702; *People v. Eckles* (1980), 83 Ill. App. 3d 292, 404 N.E.2d 358.) There was no real possibility that the jury could have been confused by this instruction.

Having carefully reviewed the record, the oral and written briefs of counsel and the authorities cited therein, we find no error occurred at the trial of this cause in the circuit court. Accordingly, the verdicts of the jury, and the convictions entered on those verdicts, are affirmed. Following the defendant's conviction, a hearing was held to determine the defendant's sentence. We cannot say that no error occurred in that proceeding.

■ At the sentencing hearing, the trial judge stated:

"In considering the presentence investigation report, it is very very important in this particular case, maybe not to the criminal conduct or criminal activities of the defendant, but as to her moral conduct, character previous to the time of the incident and up to now at the present time. As to what value she places on a human life, the presentence investigation report in-

dicates that this is a criminal activity. It indicates three abortions in three years. Taking this in conjunction with the particular evidence at the trial and taking of the life of Jeffrey Williams under the circumstances which occurred in this case, what value may I ask does she place on human life? Are those things likely to occur? [*Sic.*]"

In *Roe v. Wade* (1973), 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705, the United States Supreme Court held the fundamental right to privacy guaranteed by the constitution encompasses a woman's decision to have an abortion. The lawful exercise of one's constitutional rights is not, and must not be, a factor in aggravation or mitigation in determining a criminal sentence. (*People v. Moriarty* (1962), 25 Ill. 2d 565, 185 N.E.2d 688.) Where it is clear, as in the instant case, that the sentencing judge has imposed a harsher sentence because the defendant lawfully exercised her constitutional rights, we are compelled to reverse the sentence and remand the cause for a new sentencing hearing. *People v. Moriarty* (1962), 25 Ill. 2d 565, 185 N.E.2d 688.

In accordance with the views previously set forth, and in reliance on the authorities cited, we affirm the verdict reached by the jury, but we reverse the sentence imposed, and we remand the matter to the circuit court of Peoria County for a new sentencing hearing, conducted by a judge other than the one who imposed the sentence in the instant case. It is difficult to escape the conclusion that the severity of the sentence imposed upon the defendant resulted from the views of the sentencing judge on abortion. We direct that the judge at the new sentencing hearing shall be assisted in his determination with a sentencing report which omits any reference to the defendant's lawful exercise of her constitutional rights and which complies in all other respects with statutory requirements for such reports.

Affirmed in part; reversed in part; remanded.

STOUDER, J., concurs.

PRESIDING JUSTICE HEIPLE, concurring in part and dissenting in part:

Roberta McCumber, a nurse's aide at St. Francis Hospital, left work on May 19, 1983, and was picked up by her live-in boyfriend, Jeffrey Williams, for a ride home to the apartment they shared. There, as a result of an altercation, she shot him. Not once but twice. After the first shot, she felt for his pulse and, after three fast beats, felt nothing. There were, however, loud gurgling noises coming from Williams' body that bothered her. Wanting the noises to stop, she

fired a second shot in Williams' head. The noises stopped. She then tried to move the body but found it too heavy. To make the corpse more manageable, she cut off both legs, using a hatchet, a saw and surgical scissors. She then placed the legs in a plastic trash bag, which she deposited in a dumpster at the Glenbrook Apartments, and discarded the torso in a field of tall grass in an adjacent county.

After apprehension and jury trial, Ms. McCumber was found guilty but mentally ill of three criminal offenses, to wit, voluntary manslaughter, concealment of a homicidal death and obstructing justice. Upon conviction, a presentence investigation was conducted, a sentencing hearing was held and a sentence of 10 years' imprisonment was imposed for manslaughter together with a consecutive three-year term for concealment. Sentencing options to the trial judge, Peter J. Paolucci, included probation or prison. If prison, the statutory range for this Class 1 felony is not less than four years and not more than 15 years. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(4).) The sentence imposed of 10 years was well within the permissible range.

Notwithstanding the propriety of the sentence, a majority of this court has chosen to reverse the sentence and to remand the case for resentencing by a judge other than Judge Paolucci. Why so? Because they say that Judge Paolucci considered and commented at the sentencing hearing that Ms. McCumber had three abortions in three years. Judge Paolucci is not accused of making an error of fact. She had the abortions, all right. No, Judge Paolucci is accused of considering a matter of fact that he should have disregarded. Abortions are a constitutional right, says the majority. Thus, since Ms. McCumber was only exercising her constitutional rights in that regard, the trial court had no right to consider such matters. Like Ms. McCumber, the majority is wrong. Dead wrong.

First off, abortion is not mentioned in the constitution. Neither the word itself nor any discussion of it appears there. Many rights are enumerated in that ancient document, including life, liberty, property, jury trial, due process of law and so forth. But not abortion. A strong case can be made, in fact, that abortion violates the constitution by depriving people of life without due process of law. Notwithstanding this rationale, however, our United States Supreme Court, which "interprets" the constitution, has held that a woman may not be denied the right to an abortion. *Roe v. Wade* (1973), 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705.

Now, all this ruling says is that a woman cannot be denied an abortion. It does not say that abortion is an enumerated constitutional

right. It does not say that abortion is a commendable act. It does not say that the perpetrator is entitled to be named Mother of the Year, receive the Good Homemaking Award or any other thing. It simply says she can do it. That is all.

In a similar vein, it should be noted that there are many things which the law does not prohibit but which are not badges of honor. People can be cruel, mean, nasty, drunken, dishonest, abusive of friend, family, and stranger alike and still avoid the clutches of the law. So far as I know, there is no constitutional prohibition nor legal impediment to cutting the legs off of a corpse. Fortunately for Judge Paolucci, he did not mention that aggravating factor in passing sentence. After all, since the law does not prohibit that act, it could be argued that Ms. McCumber was only exercising another of her constitutional rights.

The plain truth of the matter is that Judge Paolucci committed no error. The law mandates that a sentencing hearing be held. Further, it is a fundamental sentencing principle that a judge may appropriately conduct an inquiry broad in scope into the general moral character of a defendant, his mentality, his habits, his social environment, his abnormal or subnormal tendencies, his age, and the life, family, occupation and record of the defendant. (*People v. La Pointe* (1981), 88 Ill. 2d 482.) A judge, within reasonable bounds, may seek facts which aggravate or mitigate an offense subject only to the prerequisite that such information be accurate and reliable. *People v. Meeks* (1980), 81 Ill. 2d 524.

Certainly, the fact that the defendant became pregnant and had three abortions in the three years preceding her sentencing was relevant to the defendant's moral character, social environment, habits and family life. In 1981, the defendant aborted an unwanted child who was the product of an unmarried union with a man other than the victim in this case. In 1982, the defendant married yet another man in Florida, left him, moved in with the victim in this case and left him to begin dating yet another man who paid for her to have a second abortion. Then, while incarcerated in the Peoria County jail on these charges, she had yet a third abortion. What is the critical language of Judge Paolucci that causes the majority to reverse the sentencing in this case? It is his mentioning of her three abortions and the asking of the rhetorical question, "what value may I ask does [the defendant] place on human life?" What value, indeed? A proper question, Judge Paolucci.

An abortion constitutes the taking of a human life. That is a fact. That it may not be a crime, that the State is powerless to prevent it,

does not alter the fact. The defendant's conduct in this case, her use of three abortions in three years preceding the sentencing and coupled with her killing of the defendant, indicates a conscious disregard for human life. That is a fact. To say that the consideration of such facts by a sentencing judge is error is to fly in the face of reality. Justice is supposed to be blind but not ignorant or callous.

For the reasons given, the 10-year sentence should be affirmed in this case. The sentence imposed by Judge Paolucci is well within the permissible range and is reasonable under the circumstances. Resentencing accomplishes nothing other than to give the defendant another roll of the dice and the possibility of obtaining a lenient judge who could impose a lesser sentence or even probation. Whether such will in fact happen is mere speculation. It is, however, a possibility. And if the new judge imposes the same sentence, what then? Will this court then affirm it or reduce the sentence on its own motion? Only time will tell.

The procedure in this case is, however, yet another example of the legalistic manipulation, oft repeated, that has brought our system of justice into disrepute. Accordingly, while I concur with that portion of the majority opinion which affirms the conviction, I dissent from the reversal of the sentence and the remand for resentencing.