THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. ROBERTA McCUMBER, Defendant-Appellant.
Third District   No. 3—86—0052

Opinion filed October 10, 1986.

HEIPLE, J., dissenting.

Peter A. Carusona, of State Appellate Defender's Office, of Ottawa, for appellant.

John A. Barra, State's Attorney, of Peoria (Terry A. Mertel, of State's Attorneys Appellate Service Commission, of counsel), for the People.

PRESIDING JUSTICE SCOTT delivered the opinion of the court:

Roberta McCumber, the defendant, for the second time appeals to this court. As to her first appeal, this court affirmed her convictions of guilty but mentally ill for the offenses of voluntary manslaughter, concealment of a homicidal death, and obstructing judgment, but remanded the case to the circuit court of Peoria County for resentencing before a different judge since it was apparent that the sentencing judge considered an improper factor in imposing sentences. For the facts and events underlying the defendant's conviction and incarceration see *People v. McCumber* (1985), 132 Ill. App. 3d 339, 477 N.E.2d 525.

In this second appeal the defendant presents one issue for review, to wit: whether the resentencing judge imposed an excessive sentence on the conviction for voluntary manslaughter. Before ad-

dressing this issue some prefatory observations are in order. The trial judge first imposed a 10-year sentence on the conviction of voluntary manslaughter and a 3-year sentence for the offense of concealment of a homicidal death. These sentences were to be served consecutively. No sentence was imposed on the conviction of obstructing justice. In imposing the foregoing sentences, the trial judge indicated that the defendant placed little value on human life since she had three abortions in three years. In the previous appeal this court held that the matter of defendant's abortions was a factor improperly considered when imposing sentence. The United States Supreme Court has held that the fundamental right to privacy guaranteed by the constitution encompasses a woman's decision to have an abortion. (*Roe v. Wade* (1973), 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705.) The lawful exercise of one's constitutional rights is not, and must not be, a factor in aggravation or mitigation in determining a criminal sentence. *People v. Moriarty* (1962), 25 Ill. 2d 565, 185 N.E.2d 688.

On remand to the trial court, the resentencing judge presided at a new sentencing hearing. Prior to the hearing a new presentence investigation and report was ordered and the same was prepared and filed. Both the defendant and the State expressed their satisfaction with the report and stated that the same was accurate. The State presented no testimony at the hearing. The defendant testified on her own behalf. After arguments by counsel the resentencing judge imposed terms of imprisonment identical with those previously imposed by the trial judge, with the exception that they were to run concurrently.

As stated in our prior opinion in this cause, "[i]t is difficult to escape the conclusion that the severity of the sentence imposed upon the defendant resulted from the views of the sentencing judge on abortion." *People v. McCumber* (1985), 132 Ill. App. 3d 339, 345, 477 N.E.2d 525, 530.

The remarks of the trial judge when the defendant was first sentenced. are amply set forth in this court's prior opinion. We will not again set them forth verbatim; however, the undisputable essence of the same was that, disregarding the criminal activity of the defendant, she was nonetheless a person of low moral character who placed a low value on human life, and this last conclusion was buttressed by the trial court's observation concerning the defendant's abortions.

The right of a woman to obtain an abortion is a burning issue of national scope. We will not express our personal views on the ques-

tion, nor should we, since as a lower court of review we must adhere to our nation's highest tribunal, the United States Supreme Court. (*Roe v. Wade* (1973), 410 U.S. 113, 35 L. Ed. 2d 147, 93 S. Ct. 705; *Thornburgh v. American College of Obstetricians & Gynecologists* (1986), 476 U.S. ___, 90 L. Ed. 2d 779, 106 S. Ct. 2169.) It is apparent that this court engaged in an act of futility in remanding this cause for a resentencing hearing. We so conclude since it is glaringly clear that the defendant's original sentence was determined after considering improper factors. At defendant's second sentencing hearing the resentencing judge reimposed the same sentence on the voluntary-manslaughter conviction.

■ That the resentencing judge changed defendant's sentences by ordering that the 10-year term of imprisonment for voluntary manslaughter should run concurrently with the 3-year term of imprisonment for concealment of a homicidal death is of little consequence since consecutive sentences should not have been imposed in the first sentencing hearing. A court shall not impose a consecutive sentence unless the court determines that such is required to protect the public from criminal conduct by the defendant. Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—4(b); *People v. Merz* (1984), 122 Ill. App. 3d 972, 461 N.E.2d 1380.

The trial judge who imposed the first sentence on the defendant never found that a consecutive sentence was necessary to protect the public from further criminal conduct by the defendant, but, on the contrary, in reviewing various sentencing factors the court stated:

> "And as to the factors in mitigation, probably the defendant did act under strong provocation at that particular time. I'll make a finding that the defendant has no history of prior delinquency or prior criminal activity.
>
> As to defendant's criminal conduct, whether the result of the circumstances is likely to recur, how can I make a finding on that when the testimony won't even show whether or not that will occur. Many things are conjecture, speculative in nature, or guess. We certainly don't ask the jury to do that. We ask them to base their decision on the law and the evidence. So I'm not going to give you that. Probably the defendant would comply with the terms of probation ***."

■ It would have been preferable for the trial court to rectify its mistake since sentencing basically falls within the purview of that court; however, since such was not done, for the reason we have just discussed and for others which will be set forth, this court will

reduce the sentence imposed upon the defendant by exercising the authority granted by Supreme Court Rule 615(b)(4) (87 Ill. 2d 615(b)(4)).

Before we consider the proper sentence to be imposed, we direct our attention to the second sentencing hearing conducted by the circuit court. The defendant testified in her own behalf and had supporting statements from a psychiatrist, a psychologist, an associate circuit judge, a school board member and a dozen or so other statements from responsible citizens. The only statements received in opposition to a reduced sentence being imposed were from the victim's (Jeffrey Williams') mother and an ex-girlfriend. These latter statements related solely to the victim's temper. The defendant, during trial, testified that she shot and killed the victim as he was beating and choking her. The statements from his mother and ex-girlfriend indicated that the victim had inherited a bad temper, that he got drunk, used pot, and, when he had a temper tantrum, he yelled, kicked doors, threw things, and smashed glass and ashtrays, but that his fits of temper were directed at "things," not people. These two statements were the only evidence admitted in aggravation of sentencing.

We will not set forth in depth the testimony and statements admitted into evidence on behalf of the defendant at the resentencing hearing. The resentencing judge accurately set forth the same in his finding when, in stating the reasons for the sentence imposed, the court noted that the defendant had no history of prior criminality or delinquency and that her character and attitude indicated that she was not likely to commit another crime; that she would comply with any rules or regulations placed upon her; and that she (the defendant) had a good work record and strong family support. The court found that the only statutory aggravating factor present was that a sentence was necessary to deter others from committing the same crime. Finally, the court noted the second shooting of the victim and dismemberment and disposal of the body and the defendant's attitude after the crime justified the sentence imposed.

At the time of the crime the defendant was 22 years old. The record is replete with various testings which indicate that she has an above-average I.Q. She had a good employment record and several former employers expressed a willingness to reemploy her. The defendant has an unblemished record and is, in fact, a model prisoner at the correctional institution where she is incarcerated. Considerable evidence was introduced concerning the strong family support that awaits her when released from incarceration.

Deterring others from committing a like crime is a proper factor to be considered at a sentencing hearing. We doubt the applicability of such factor in the instant case. It is doubtful if it would deter an individual who is mentally ill, as the jury found the defendant to be in this case. Such mental illness and post-crime amnesia could well explain the defendant's bizarre behavior subsequent to the crime. It is noted that the psychiatric report filed by the doctor at the correctional institution indicated that psychiatric treatment was no longer needed. A clinical psychologist who treated the defendant during her confinement felt that if placed on probation her prognosis would be good to excellent.

While the sentencing judges in this case obviously gave consideration to the nature and circumstances of the offense, we believe that they did not give adequate weight to the history and character of the defendant and defendant's potential for rehabilitation. A proper objective in determining the extent and nature of a criminal penalty is the restoration of useful citizenship. (Ill. Const. 1970, art. I, sec. 11.) In examining the record in this case, we find a number of factors present which the reviewing courts deem supportive of a sentence reduction, to wit: an unblemished record as to previous criminal activity (*People v. Goodwin* (1980), 83 Ill. App. 3d 203, 403 N.E.2d 1051), availability of strong family support, favorable employment record, and age (*People v. Bailey* (1980), 88 Ill. App. 3d 416, 410 N.E.2d 545).

Voluntary manslaughter was elevated to the status of a Class I felony effective January 1, 1982. (Ill. Rev. Stat. 1983, ch. 38, par. 9—2.) For the commission of such an offense, a sentence of not less than 4 years or more than 15 years may be imposed. (Ill. Rev. Stat. 1983, ch. 38, par. 1005—8—1(a)(4).) A sentence of probation may also be imposed. Ill. Rev. Stat. 1983, ch. 38, par. 1005—5—3(b)(1).

We are not privy to any statistical information as to the number of voluntary-manslaughter convictions upon which a sentence of probation was imposed; however, in the year 1985 sentences of imprisonment were imposed in eight voluntary manslaughter cases in the Third Appellate Court District which is comprised of 21 counties in the northern central part of Illinois. As to these eight cases, the median sentence imposed was six years and two months. In 1985, 49 individuals who had been imprisoned for the offense of voluntary manslaughter were released by the Department of Corrections, and the median time served by these individuals was two years and three months. This figure includes time spent incarcerated pending trial. The median prison-time stay was one year and six months. Illi-

nois Department of Corrections Statistical Presentation (1985), at 21, 51, 86.

For the reasons stated and pursuant to the authority granted to this court by Supreme Court Rule 615(b)(4) (87 Ill. 2d 615(b)(4)), this court reduced the defendant Roberta McCumber's sentence to a term of seven years' imprisonment.

The judgment and sentence of the trial court is affirmed as modified.

Affirmed as modified.

STOUDER, J., concurs.

JUSTICE HEIPLE, dissenting:

In what amounts to a pure power play, nothing else, the majority of this court has chosen to reduce the defendant's sentence from 10 years to 7 years. This same majority initially reversed the defendant's first sentence and remanded the cause for resentencing by a different judge. No error of any sort was alleged to have occurred at the second sentencing hearing. Nonetheless, the majority finds that the 10-year sentence is too severe.

In arriving at what the majority believes is a correct figure of seven years, it arbitrarily chose eight voluntary-manslaughter cases from the Third Appellate District from 1985, determined that the median sentence imposed in those eight cases was six years and two months, and then reduced the defendant's sentence in this case to seven years.

It goes without saying that there is no scientific yardstick for determining beyond peradventure the exact amount of punishment which the State should impose for a crime. G. W. F. Hegel was correct when he opined that "reason cannot determine *** any principle whose application could decide whether justice requires for an offense (1) *** forty lashes or thirty-nine, or (2) a fine of five thalers or four." G. W. F. Hegel, Philosophy of Right (English translation 1971).

Knowing this to be the case, the State legislature has imposed a range of sentence of 4 to 15 years for voluntary manslaughter. Within that range, the sentencing judge weighs various factors in determining what he believes to be the appropriate sentence. While sentences are subject to review for abuse of discretion, the law is clear that the reviewing court is not called upon to substitute its own judgment for that of the trial court. That is precisely what has

occurred in this case. A majority of this court has substituted its own judgment for that of the trial court in a case where the trial court did not exceed its discretion.

In this usurpation of the trial court function, the majority apparently believes the defendant to be a fine young lady with great future potential. They find she has been a model prisoner who is no longer mentally ill and who has job opportunities upon her release from custody. One also gathers from the majority's analysis that the victim in this case may have deserved to be shot, cut into pieces and his body parts distributed about central Illinois. Reference is made to my initial dissent in this case for details of this grisly crime and the majority's initial erroneous decision to remand this case for resentencing. See *People v. McCumber* (1985), 132 Ill. App. 3d 339, 345, 477 N.E.2d 525.

Parenthetically, it should be noted that if the sentence reduction to seven years sticks, the defendant's release from custody will be all but imminent. This is so because Illinois gives one day of credit for each day served plus some additional days for good conduct and the possibility of early release under supervised conditions. A 7-year sentence under such formula translates into something less than 3½ years. This crime occurred approximately 3½ years ago, and the defendant has been in custody for a goodly portion of that intervening time.

I make no comment on the defendant's rehabilitation or lack of it. I likewise make no comment on whether the initial sentence in this case should have been 10 years or something more or something less. Such comments would not be germane. The only issue here is whether the sentence imposed was within the statutory range and whether the trial judge exceeded his discretion. It is clear that, since the sentence was within the permissible range and since the trial judge did not exceed his discretion, the 10-year sentence imposed is not a fit subject for appellate tampering.

What is really at issue here is the rule of law versus the rule of men. The majority decision in this case institutes a *de novo* sentencing procedure in the appellate court. In so doing, it subverts justice and does violence to the rule of law.

Accordingly, I dissent.