Nicholas BIDDINGER, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A05–0504–CR–234.

Court of Appeals of Indiana.

April 25, 2006.

Rehearing Denied June 29, 2006.

Transfer Granted Aug. 24, 2006.

Richard Kammen, Gilroy, Kammen & Hill, Indianapolis, for Appellant.

Steve Carter, Attorney General of Indiana, Richard C. Webster, Deputy Attorney General, Indianapolis, for Appellee.

## OPINION

BAKER, Judge.

Appellant-defendant Nicholas Biddinger appeals from the sentence imposed by the trial court after Biddinger pleaded guilty to one count of Aggravated Battery,[1] a class B felony. In particular, Biddinger argues that the trial court erred in: (1) refusing to permit him to make a statement in allocution; (2) considering the type of gun and ammunition Biddinger used in committing the crime as an aggravating circumstance when it was lawful for him to own and possess them; (3) overlooking the fact that Biddinger suffered from post-traumatic stress disorder (PTSD) as a mitigator; and (4) imposing a sentence that is inappropriate in light of the nature of the offense and his character.

We conclude that the trial court erred in considering the type of weapon and ammunition that Biddinger used in committing the instant offense as an aggravating circumstance. We also conclude that the trial court should have considered Biddinger's PTSD to be a mitigator. But because the trial court sentenced Biddinger to the minimum amount of executed time permitted by the plea agreement—ten years—we do not have authority to reduce his sentence. Consequently, we affirm the judgment of the trial court.

## FACTS

In March 2002, just prior to his graduation from high school in Shelbyville, Biddinger obtained a permit to carry a gun. The gun, which Biddinger carried frequently, was a .40–caliber Glock that was loaded with hollow-point bullets.[2] In May 2003, Biddinger was vacationing in Miami, Florida, with his parents, when he was attacked by two men who pistol-whipped and threatened to shoot him.

On January 17, 2004, Biddinger and his girlfriend, Jessica Powell, planned to spend the night at Powell's house because her mother and her mother's boyfriend would be gone for the weekend. That evening, Powell received a telephone call from eighteen-year-old Jason Gross, seventeen-year-old Grant Hoefener, and nineteen-year-old Kris Holzhausen, who wanted to come and spend time at Powell's house that night.

After Powell's mother and her boyfriend left, Powell, Gross, Hoefener, and Holzhausen went to a nearby liquor store and paid someone to buy vodka and beer for them. They returned to Powell's house and began to drink and play drinking games. Biddinger did not join in, remaining in another room watching television while Powell stayed with the three others, drinking and dancing. At some point, Bid-

---

1. Ind.Code § 35–42–2–1.5.

2. A hollow-point bullet has "a pit, or hollowed out shape, in its tip, meant to cause it to expand upon entering a target. When the bullet strikes a soft target the pressure created in the pit forces the lead around it to expand greatly into a mushroom-shape. This causes considerably more soft-tissue damage and energy transfer than if the nose had not been hollow.... [H]ollow point bullets are one of the most common types of civilian and police ammunition, due largely to the reduced risk of bystanders being hit by over penetrating or ricocheted bullets, and the increased speed of incapacitation." Wikipedia, the free Encyclopedia, *Hollow point bullet*, http://en.wikipedia.org/wiki/Hollow_point_bullet (last visited Mar. 22, 2006).

dinger told Hoefener and Holzhausen that he thought that Gross was flirting with Powell, and that if Gross continued to flirt with her, Biddinger was going to shoot him. Gross later learned of Biddinger's threat, which precipitated an argument between Biddinger and the three other men, who were intoxicated. The argument continued as the night progressed.

Biddinger also argued with Powell, saying that the three other men should leave and go home. But Powell did not want them to leave because they had been drinking and were too intoxicated. Powell finally told Biddinger to call his parents to come and get him because Biddinger did not have a driver's license and was unable to drive himself home.

After Biddinger telephoned his parents, he and Powell waited in her bedroom until they arrived. When they arrived, Biddinger grabbed his bag and began to walk to the kitchen so that he could exit the home through the kitchen door. Hoefener, Gross, and Holzhausen began arguing with Biddinger again as he exited the house. After Biddinger left through the kitchen door, Gross and Holzhausen followed him outside and stood at the top of the driveway, yelling at him. As the two men were yelling at Biddinger, he walked to the end of the driveway and placed his bag in his parents' vehicle.

Biddinger's father, Robb, exited his vehicle, told Biddinger to get inside the vehicle, walked up the driveway followed by his wife, Ginger, and entered the door into the kitchen of Powell's house. Robb, who had a gun in his hand, pushed Hoefener against the stove, pointed the gun at his stomach, told him not to bother Biddinger again, and threatened to shoot him. Powell began pushing Robb, telling him to get out, while at the same time, Ginger grabbed Robb, told him, "Let's go," and

began pulling him toward the door. Tr. p. 25, 259.

While the activity was taking place in the kitchen, Biddinger began walking up the driveway toward the house, but was prevented from re-entering the home by Holzhausen, who had remained outside. Biddinger pulled his gun, told Holzhausen to back off, and then shot Holzhausen in the left side of his chest near his heart. Police and emergency medical technicians (EMTs) were called and came to the scene. The EMTs transported Holzhausen to the hospital, where he died later that morning as a result of the gunshot wound.

On January 18, 2004, Biddinger was arrested for killing Holzhausen. He was eventually charged with murder, class C felony battery, class D felony pointing a firearm, class D felony criminal recklessness, and class B felony aggravated battery. A jury trial commenced on October 7, 2004.

On October 13, 2004, Biddinger entered into a guilty plea, whereby he pleaded guilty to aggravated battery in exchange for the State dismissing the remaining charges against him. The parties were free to argue aggravating and mitigating circumstances but agreed that Biddinger would receive an executed sentence of at least ten, and at the most, twenty years of incarceration. By the terms of the plea agreement, Biddinger waived the *Blakely* requirement and requested that the trial court determine the aggravating circumstances.

At the sentencing hearing on December 3, 2004, Biddinger presented evidence concerning the possibility that he might be suffering from PTSD and the effect that PTSD might have had on him at the time he shot and killed Holzhausen. At the conclusion of the evidence, Biddinger sought to make a statement at the appropriate time, but the trial court ruled that

allocution was not available because Biddinger had pleaded guilty. According to the trial court, allocution only applies when a defendant pleads not guilty, a trial is held, and a verdict is rendered. The trial court ruled that Biddinger could make a statement with respect to his remorse but could not address any other mitigating factors. Biddinger's counsel proffered Biddinger's full written statement,·which he would have given if not for the trial court's ruling, in an envelope and entered the envelope into evidence. Biddinger then made a statement in which he apologized for committing the crime and asked the trial court to impose a sentence that it deemed to be fair.

The trial court found the following aggravating circumstances: (1) Biddinger's weapon was of large caliber and was loaded with hollow-point bullets; (2) Biddinger knew that he was the only person at Powell's house that night who was armed with a gun; (3) Biddinger was told to leave, it was not his idea to leave; neither Biddinger nor Robb had the right to reenter Powell's residence; Holzhausen was acting in defense of others in not allowing Biddinger to reenter the residence with a gun; (4) Biddinger could have retreated at any time once he was outside the home; and (5) Biddinger intended to and did shoot Holzhausen in the left side of his chest, near his heart. The trial court found that the most significant aggravating circumstance, which outweighed all mitigators, was the fact that Holzhausen was not armed, which Biddinger knew at the time he shot him.

The trial court also found the following mitigating circumstances: (1) Biddinger accepted responsibility by pleading guilty; (2) there was provocation until Biddinger exited the house; (3) the crime involved circumstances unlikely to recur; (4) Biddinger's lack of a prior criminal history;

and (5) Biddinger was unlikely to commit any other crimes.

Ultimately, the trial court concluded that the aggravators outweighed the mitigators. It imposed a twelve-year sentence on Biddinger, with ten years executed and two years suspended to probation. The trial court also ordered Biddinger to undergo a mental health evaluation and treatment for PTSD through his probation.

## DISCUSSION AND DECISION

### I. Right of Allocution

Biddinger first argues that the trial court erred in refusing to permit him to make a statement of allocution. Indiana Code section 35–38–1–5 provides that when a defendant appears for sentencing, he may "make a statement personally on his own behalf and, before pronouncing sentence, the Court shall ask him whether he wishes to make such a statement."

The purpose of the right of allocution is to give the trial court the opportunity to consider the facts and circumstances relevant to the sentencing of the defendant in the case before it. *Vicory v. State*, 802 N.E.2d 426, 429 (Ind.2004). When the defendant is given the opportunity to explain his view of the facts and circumstances, the purpose of the right of allocution has been accomplished. *Id.* at 430. A defendant claiming that he was denied his right to allocution carries a strong burden in establishing his claim. *Id.* at 429.

Here, the trial court ruled that Biddinger could make a statement but could not argue mitigating circumstances therein. Biddinger claimed that it was an improper restriction on his right of allocution, but agreed to make an abbreviated statement in which he limited himself to an expression of remorse for his actions. Ad-

ditionally, Biddinger's attorney proffered Biddinger's full written statement in a sealed envelope, submitting it as Exhibit K.

The State argues that a defendant is only entitled to make a statement of allocution when he pleads not guilty and trial has occurred, resulting in a verdict or finding of guilty. *Fuller v. State*, 485 N.E.2d 117, 122 (Ind.1985); *Devore v. State*, 658 N.E.2d 657, 660 (Ind.Ct.App.1995). Biddinger essentially contends that *Devore* has been implicitly overruled by the rule announced in *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531, 159 L.Ed.2d 403 (2004).

We need not resolve this debate, however, as Biddinger has not established that the full statement he would have offered—contained in Exhibit K—would have reduced the sentence imposed by the trial court. *See Robles v. State*, 705 N.E.2d 183, 187 (Ind.Ct.App.1998) (observing that defendant had not made any assertion as to the content of any purported statement that he might have made nor how the statement may have benefited him). Biddinger does not argue that his full statement would have benefited him, and, indeed, having reviewed Exhibit K, we do not believe that it would have affected the trial court's imposition of his sentence in any way. Aside from Biddinger's remorse, which the trial court permitted him to express at sentencing, the full statement essentially contains a recitation of the evening's events from Biddinger's point of view, which parallels the statement of facts in his brief on appeal. Indeed, the brief notes that Biddinger "made a complete statement describing the events that led to the shooting of Holzhausen," Appellant's Br. p. 8, and the trial court was able to refer to that statement in imposing Biddinger's sentence. Consequently, we conclude that even if the trial court erred in

refusing to permit Biddinger to make a full statement of allocution, it was harmless error, inasmuch as Biddinger's full statement contains no additional information that would have affected his sentence.

## II. Aggravators and Mitigators

■ Biddinger next contends that the trial court erred in considering an improper aggravator and in declining to give mitigating weight to a proffered mitigator. As we consider these arguments, we observe that sentencing determinations are within the sound discretion of the trial court, and we will only reverse for an abuse of discretion. *Krumm v. State*, 793 N.E.2d 1170, 1186 (Ind.Ct.App.2003). An abuse of discretion occurs if the trial court's decision is clearly against the logic and effect of the facts and circumstances before the court. *Id.*

■ In a sentencing statement, a trial court must identify all significant aggravating and mitigating factors, explain why such factors were found, and balance the factors in arriving at the sentence. *Bryant v. State*, 841 N.E.2d 1154, 1156 (Ind.2006). A trial court is not obligated to weigh a mitigating factor as heavily as the defendant requests. *Smallwood v. State*, 773 N.E.2d 259, 263 (Ind.2002). A single aggravating factor may support the imposition of an enhanced sentence. *Payton v. State*, 818 N.E.2d 493, 498 (Ind.Ct. App.2004), *trans. denied.*

### A. Type of Weapon and Ammunition

■ Biddinger contends that the trial court erred in considering the type of weapon and ammunition he used to kill Holzhausen as an aggravating factor. In particular, Biddinger argues that because he was legally entitled to carry a large caliber weapon loaded with hollow-point bullets, it was an inappropriate aggravator.

The "nature and circumstances" of a crime may be a proper aggravating circumstance. *McCann v. State*, 749 N.E.2d 1116, 1120 (Ind.2001). To enhance a sentence based upon the nature and circumstances of the time, there should be "some indication that the manner in which the crime was committed was particularly egregious, beyond what the legislature contemplated when it prescribed the presumptive sentence for that offense." *Pagan v. State*, 809 N.E.2d 915, 927 (Ind.Ct. App.2004).

The State argues that "[t]he nature of a weapon, the manner in which it is used[,] and the circumstances surrounding the case are sufficient to find that aggravating circumstances exist in the use of a weapon." Appellee's Br. p. 8. As support for this argument, the State directs our attention to a number of opinions that allegedly consider the nature of the weapon used in a crime as an aggravating circumstance. But our review of these cases establishes that, to the contrary, the aggravators are focused on the nature of the crime or shooting rather than the weapon itself. *See Adkins v. State*, 561 N.E.2d 787, 789 (Ind.1990) (considering nature of shooting); *Washington v. State*, 422 N.E.2d 1218, 1221 (Ind.1981) (same); *Smith v. State*, 580 N.E.2d 298, 303 (Ind.Ct.App.1991) (considering nature of shooting). Here, however, Biddinger's possession of a large-caliber weapon and hollow-point bullets alone was the aggravator.

As Biddinger observes, it is well established that the "right of Indiana citizens to bear arms for their own self-defense and for the defense of the state" is protected by the State and Federal Constitutions. *Kellogg v. City of Gary*, 562 N.E.2d 685, 694 (Ind.1990); *see also Schubert v. DeBard*, 398 N.E.2d 1339 (Ind.Ct. App.1980). Indeed, it is undisputed that Biddinger's possession of the large-caliber weapon and hollow-point bullets was legal and constitutionally protected. We agree with our sister court in Illinois that "[t]he lawful exercise of one's constitutional rights is not, and must not be, a factor in aggravation or mitigation in determining a criminal sentence." *People v. McCumber*, 132 Ill.App.3d 339, 87 Ill.Dec. 548, 477 N.E.2d 525, 529 (1985). Thus, because Biddinger's mere possession of the weapon and ammunition was lawful and constitutionally protected, the trial court erred in considering that conduct to be an aggravating factor.

Once we remove Biddinger's possession of the weapon and ammunition as an aggravator, however, there are still a number of proper remaining aggravating factors: (1) Biddinger knew that he was the only person at Powell's house that night who was armed with a gun;[3] (2) Biddinger was told to leave, it was not his idea to leave; neither Biddinger nor Robb had the right to reenter Powell's residence; Holzhausen was acting in defense of others in not allowing Biddinger to reenter the residence with a gun; (3) Biddinger could have retreated at any time once he was outside the home; and (4) Biddinger intended to and did shoot Holzhausen in the left side of his chest, near his heart. Under these circumstances, the trial court's error in considering Biddinger's possession of the weapon and ammunition was harmless, inasmuch as we can say

---

**3.** Biddinger argues that this aggravator is improper because it is also punishing him for being armed, which is constitutionally protected conduct. To the contrary, however, this aggravator centers on Biddinger's knowledge that he was the only person at Powell's house that night who was armed, which shows that he was not in fear of being shot and killed by one of the other people who were present. Accordingly, this aggravator properly focuses on the nature and circumstances of the crime.

with confidence that the trial court would have imposed the same sentence even if it had not considered the inappropriate aggravating circumstance.

### B. Biddinger's PTSD

 Biddinger next contends that the trial court erred in refusing to consider the possibility that he suffered from PTSD as a mitigating circumstance. The trial court is not obligated to accept the defendant's arguments regarding what constitutes a mitigating circumstance. *Legue v. State,* 688 N.E.2d 408, 411 (Ind.1997). And as our Supreme Court commented in *Legue,* finding mitigating circumstances "may involve the consideration and evaluation of various factors .... These matters are best left to the sound discretion of the trial court." *Id.* But when the trial court fails to find a significant mitigator that is clearly supported by the record, there exists a reasonable belief that it was overlooked. *Id.*

As support for this argument, Biddinger directs us to a series of cases in which our Supreme Court has held that proven mental illness should be given significant mitigating weight. *See, e.g., Crawford v. State,* 770 N.E.2d 775 (Ind.2002); *Weeks v. State,* 697 N.E.2d 28, 30–31 (Ind.1998); *Archer v. State,* 689 N.E.2d 678, 686 (Ind. 1997). But these and other cases cited by Biddinger all involve defendants who pleaded or were found guilty but mentally ill, which is easily distinguishable from the situation herein. Consequently, we conclude that the trial court was not required by these cases to consider Biddinger's PTSD as a mitigator.

That conclusion does not end our inquiry, however, inasmuch as there is no evidence in the record contradicting Biddinger's claim that he suffers from PTSD as a result of the Miami attack. Moreover, the trial court clearly concluded that Biddinger suffered from PTSD, inasmuch as it ordered that he receive treatment for PTSD through his period of probation. Appellant's App. p. 90. But the trial court never mentioned Biddinger's PTSD in its discussion of mitigating factors even though it explicitly considered and rejected other proffered mitigators. Indeed, the trial court was silent on the subject until it ordered that Biddinger be treated for PTSD as part of his sentence. Under these circumstances, we conclude that Biddinger's PTSD was overlooked as a mitigating circumstance.

 But Biddinger and the State entered into a plea agreement, which provided that "[t]here shall be a range of executed time the Court may impose, from ten (10) to twenty (20) years." Appellant's App. p. 57. The trial court imposed a twelve-year sentence on Biddinger, with ten years executed and two years suspended to probation. Because the plea agreement is binding, we do not have authority to reduce Biddinger's sentence. *Bennett v. State,* 802 N.E.2d 919, 921–22 (Ind. 2004). Consequently, we are compelled to affirm the sentence imposed by the trial court.

### III. Appropriateness

 Finally, Biddinger argues that the sentence imposed by the trial court is inappropriate in light of the nature of the offense and his character. But Biddinger entered into a plea agreement providing that the trial court was entitled to impose a sentence of ten to twenty years. Inasmuch as the trial court sentenced Biddinger to the lowest end of the term provided by the plea agreement, we need not address this argument. And in any event, because his plea agreement provided a cap on sentencing, Biddinger is not entitled to raise an argument with respect to the appropriateness of his sentence. *Edwards v.*

*State*, 842 N.E.2d 849, 854 (Ind.Ct.App. 2006).

The judgment of the trial court is affirmed.

SULLIVAN, J., and MAY, J., concur.